[No. 36802-8-I.   Division One.   April 28, 1997.]

J. L. STEELE, *Respondent*, v. GARY LUNDGREN, ET AL., *Appellants*.

*Mark R. Busto* and *Sebris Busto & Marshall, P.S.*, for appellants.

*Richard D. Reed* and *Law Offices of Judith A. Lonnquist, P.S.*, for respondent.

BECKER, J. — Following 10 months of litigation in superior court, the defendant in a sexual discrimination suit became aware that the parties' employment contract included an arbitration clause, and moved to compel arbitration. The superior court denied the motion, concluding that the defendant had waived his right to arbitration by first conducting lengthy and aggressive litigation. Finding the waiver determination adequately supported, we affirm.

## FACTS

The defendants (Lundgren) are Gary Lundgren and several investment companies he controls. The plaintiff, J.L. Steele, was self-employed at "Nails by Jama" before she began working for Lundgren. In January 1991, she became a regular, full-time employee performing various administrative tasks, including tasks associated with bond and mutual fund trading for one of Lundgren's companies, Interpacific Investors Services, Inc. Interpacific is a member of the National Association of Securities Dealers. Steele says she became an officer of Interpacific; Lundgren described her position as being his executive assistant.

This suit arises from Steele's allegations that Lundgren, as her supervisor, violated the Washington Law Against Discrimination by engaging in a pattern and practice of improper sexual advances, comments and actions. She alleges that because she rebuffed his advances, he retaliated by demoting her, eliminating various privileges, and reducing her pay. Steele's employment with Lundgren ended in November 1992. She claims damages of wage loss, disability and emotional distress.

By her attorney's letter to Lundgren on January 13, 1993, Steele first notified Lundgren of her claim and sought to settle the matter privately. Lundgren refused to discuss settlement, responding that he would "vigorously defend any lawsuit" brought against him. In October 1993 Steele initiated the present suit. Attached to her com-

plaint was a request for discovery. Shortly thereafter, Lundgren appeared, answered, and responded to the discovery request.

On February 2, 1994, at the defendants' request, the parties attended a mediation session. The mediation was unproductive. Lundgren filed an extensive discovery request on March 3. On April 13, 1994, Steele filed a Confirmation of Joinder of Parties, Claims, and Defenses, a form document in which the parties represent "This case is not subject to mandatory arbitration."

On July 26, 1994, Lundgren substituted counsel. Lundgren later explained that he did so because his previous attorney had failed to advise him that persons licensed by the NASD agree, as a condition of licensure, to submit to arbitration all claims against their employers. Lundgren had learned this from a business publication.

Lundgren did not immediately assert arbitration as a defense. On August 23, 1994, the case was assigned to Judge Michael Hayden on the Individual Calendar. The case was given a trial date of May 15, 1995. The first mention of arbitration came on September 22, 1994 when the parties filed a required joint status report. This status report noted that "Defendant plans to file a motion to dismiss plaintiff's claims in the near future due to an arbitration agreement."

On October 7, 1994, Steele moved for summary judgment on the issues of strict liability and punitive damages. Two weeks later Lundgren moved the court to allow him to amend his answer to add mandatory arbitration as an affirmative defense and to summarily dismiss Steele's claims on the basis that she had failed to arbitrate.

Lundgren's motions introduced into the court file an agreement to arbitrate contained in a SEC Form U-4 Uniform Application for Security Industry Registration or Transfer. Steele had signed the Form U-4 during her employment with Lundgren in the process of trying to obtain an SEC Series 7 license. The Form U-4 is a four-page document. The final page of the Form U-4 is the

signature page. Above Steele's signature are 10 numbered paragraphs under the heading "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." The fifth paragraph contains an arbitration agreement:

> 5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of [the NASD] as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

The court treated Lundgren's motions as a consolidated motion to compel arbitration, and sought briefing on the issue whether Lundgren had waived his right to arbitrate.

The court first determined, appropriately, that under our decision in *Kinsey v. Bradley*,[1] the issue of waiver was governed by federal law. *Kinsey* states the federal standard as adopted by the Ninth Circuit: a party seeking to prove waiver of a right to arbitration must demonstrate: "(1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that right, and (3) prejudice."[2]

Following *Kinsey*, the trial court held that the first element was satisfied by Lundgren's constructive notice of the arbitration clause contained in the Form U-4. The court assigned to Steele the burden of proving the two remaining elements of waiver: acts inconsistent with arbitration, and prejudice. The court then permitted the parties to conduct discovery limited to the issue of waiver and to submit briefs addressing waiver and the applicability of a new Ninth Circuit decision, *Prudential Ins. Co. of Am. v. Lai*.[3] Steele argued that Lundgren had waived his right to arbitrate under the *Kinsey* test. Rely-

---

[1] *Kinsey v. Bradley*, 53 Wn. App. 167, 765 P.2d 1329 (1989).

[2] *Kinsey*, 53 Wn. App. at 169 (citing *Letizia v. Prudential Bache Ses., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986)); *see also Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

[3] *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299 (9th Cir. 1994).

ing on *Prudential*, she also contended that her own agreement to arbitrate, reflected in the Form U-4, could not be enforced because she had not knowingly waived her statutory right to a judicial forum as provided in RCW 49.60.

Preliminarily, the trial court ruled that *Prudential* did not prevent enforcement of Steele's arbitration agreement. The court found that under federal law,[4] Steele had given up her statutory right to a jury trial of her discrimination claim when she signed the Form U-4. But ultimately, the court ruled against Lundgren and denied his motion to compel, concluding that he had waived his right to arbitrate the dispute by his conduct in the preceding 10 months of litigation.

Lundgren appeals from that decision. Steele defends it in large part and seeks to have it affirmed, but in the event of reversal, she cross-appeals the trial court's preliminary legal conclusion that she made a valid agreement to arbitrate.

## STANDARD OF REVIEW

The court entered detailed findings of fact and conclusions of law in support of its order. These written findings and conclusions are extremely helpful in facilitating appellate review.

■ Lundgren has assigned error to certain findings. These we review for substantial evidence, which is analogous to the "clear error" test applied by the federal courts. We review the determination of waiver de novo, applying the legal test for waiver to the facts of Lundgren's participation in the litigation below.[5]

■ The federal circuits are united in holding that the

---

[4]*See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).

[5]*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 1926, 131 L. Ed. 2d 985 (1995); *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 693 (9th Cir. 1986); *National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987).

ultimate determination of waiver is reviewed de novo, as a matter of law. They do not all agree on how the test for waiver should be stated. The three-part test borrowed by *Kinsey* from the Ninth Circuit is one formulation. The Tenth Circuit, by comparison, examines a list of factors:

> In determining whether a party has waived its right to arbitration, this court examines several factors: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.[6]

Less important than reconciling the various statements of the test for waiver is understanding the federal policy behind the substantive law. The federal policy at issue is the Federal Arbitration Act (FAA), enacted by Congress in 1925. At that time, common-law and statutory barriers often prevented enforcement of arbitration agreements.[7] The congressional purpose behind the FAA was to eliminate these barriers and overcome judicial hostility to arbitration agreements.[8] Section 2 of the FAA insists on the enforcement of agreements to arbitrate:

---

[6]*Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988) (quoting *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980)).

[7]*See Southland Corp. v. Keating*, 465 U.S. 1, 13-14, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).

[8]*See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 838, 130 L. Ed. 2d 753 (1995).

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contact, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.[9]

■ In 1982, in the case of *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*[10] the United States Supreme Court recognized Section 2 of the FAA as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." This statement, sometimes referred to as the *"Moses H. Cone* principle,"[11] is cited as the basis of virtually every subsequent decision considering the viability of defenses to arbitration under the FAA. In light of this principle, waiver of a contractual right to arbitration is disfavored, and a party seeking to prove waiver has a "heavy burden of proof.' "[12]

Faced with a multitude of federal circuit court decisions "which, even on a good day, are sometimes hard to recon-

---

[9]9 U.S.C. § 2.

[10]*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

[11]*See, e.g., Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ.,* 489 U.S. 468, 476, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989).

[12]*Fisher v. A.G. Becker Paribas, Inc.,* 791 F.2d 691, 694 (9th Cir. 1986) (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1025 (11th Cir. 1982)); *accord Price v. Drexel Burnham Lambert, Inc.,* 791 F.2d 1156, 1158 (5th Cir. 1986). *But see Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir. 1995) ("the court is not to place its thumb on the scales; the federal policy favoring arbitration is, at least so far as concerns the interpretation of an arbitration clause, merely a policy of treating such clauses no less hospitably than other contractual provisions").

cile,"[13] the trial court in the present case ably articulated and applied a test for waiver that is consistent with federal policy under the FAA and most of the cases. The court looked for proof of the elements of waiver stated by *Kinsey*. Because Lundgren claimed his participation in litigation was neither inconsistent with arbitration, nor prejudicial to Steele, the court required Steele to prove these two prongs of the *Kinsey* test. The court, recognizing that there is no bright line rule or litmus test for finding the existence of either of these elements, found these ultimate facts based on "the totality of the circumstances."[14] "The waiver determination necessarily depends upon the facts of the particular case and is not susceptible to bright line rules."[15]

## ACTS INCONSISTENT WITH ARBITRATION

■ In determining that Lundgren's acts were inconsistent with arbitration, the court first found that in the 10 months after November 1993, when Steele filed suit, Lundgren did not express any intention to arbitrate the claim, either in his answer, or at the time Steele amended her complaint, or at the time of substitution of counsel, or at the time the case was assigned to an individual calendar. When the parties filed the required Confirmation of Joinder in April 1994, Lundgren represented to the court that the matter would remain in court. In the meantime, Lundgren participated in voluntary mediation and engaged in contentious discovery. The trial court found that all these acts were inconsistent with arbitration.[16]

Lundgren assigns error to the trial court's consideration

---

[13]2 IAN R. MACNEIL, ET AL., FEDERAL ARBITRATION LAW: AGREEMENTS, AWARDS, AND REMEDIES UNDER THE FEDERAL ARBITRATION ACT § 21.3.2.1 (1994).

[14]*See, e.g., S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (quoting *National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987)).

[15]*Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993).

[16]The trial court found Lundgren's presuit response to Steele's initial demand letter was not an act inconsistent with arbitration. Steele assigns error

of his participation in voluntary mediation as an act inconsistent with arbitration. This assignment of error is well taken. The trial court thought it would be unusual for parties who had chosen arbitration, ordinarily a fast form of alternative dispute resolution, to also subject themselves to mediation. While this may well be true in practice, mediation, because it is not binding, is more a tool to facilitate settlement than an alternative to trial. Settlement is favored in public policy. Parties should be able to pursue settlement at any time without being viewed as acting inconsistently with arbitration. Steele's complaints about mediation focus on the time, stress, and expense involved; these concerns go to prejudice rather than inconsistency. She does not allege that the mediation caused her to disclose facts that she would not have disclosed if the parties were on an arbitration track.

The court also found that Lundgren's discovery requests were inconsistent with arbitration because they "were aimed at getting information that the defendants could not get in an arbitration proceeding." Lundgren challenges this finding as unsupported by substantial evidence. This assignment of error also has merit. Lundgren submitted into evidence the NASD Code of Arbitration Procedures. Section 32 of these procedures provides for document production and information exchange; section 33 gives counsel of record subpoena power. On their face these procedures are comparable to discovery procedures available under the Civil Rules, and Steele has not argued or shown otherwise.

At the same time, the trial court found that Lundgren's conduct of discovery was "overly aggressive." Five months after the complaint was filed, Lundgren initiated defense discovery with 49 multipart interrogatories and 20 requests for production. When Steele moved for a protective order, Lundgren insisted on a hearing. In the meantime, Steele spent more than 40 hours trying to answer

---

to this finding, but has offered no argument in support of it, and therefore her assignment of error pertaining to this finding is deemed waived. *Valley View Indus. Park v. City of Redmond*, 107 Wn.2d 621, 630, 733 P.2d 182 (1987).

the discovery requests. Upon hearing the motion for a protective order, the court struck most of the discovery requests, characterizing them as "unduly burdensome, oppressive, overly broad, duplicative, and an abuse of the discovery process." The court additionally ordered no further written discovery to plaintiff without court order, and levied a $500 fine on Lundgren. Then, when the court mistakenly signed the defendant's proposed order instead of the plaintiff's, Lundgren refused to concede the mistake and forced Steele back to court to obtain a clarifying order. At the same time he attempted, through a motion for reconsideration, to relitigate the entire matter.

Lundgren does not seriously contest the trial court's characterization of this episode as "overly aggressive." And Lundgren conceded in oral argument before the trial court that the same discovery, if conducted in an arbitration proceeding, "would not have been as contentious" as what occurred in superior court. To the extent that the trial court focused on Lundgren's litigious strategy, rather than the content of discovery, the finding that Lundgren's acts were inconsistent with arbitration is well supported.

In addition, there can be no doubt that, by failing to assert arbitration at the outset and by passing up several obvious opportunities to move for arbitration, Lundgren effectively chose to litigate in superior court, which is inconsistent with arbitration in an NASD forum. For example, the parties' Confirmation of Joinder represented "No additional claims or defenses will likely be raised, although the parties reserve the right to do so if discovered." The court's forms instruct parties to file a statement of arbitrability instead of a Confirmation of Joinder if their suit is subject to mandatory arbitration. The parties must confirm joinder under local rules prior to being assigned to an individual calendar, which took place in this case on August 23, 1994. And Lundgren waited until after assignment to an individual calendar to assert his right to arbitrate, even though he had substituted counsel one month earlier for the purpose of asserting that right, a

fact that suggests he continued to weigh his options even then.

Even after eliminating the findings having to do with voluntary mediation and the content of discovery, we agree with and affirm the trial court's conclusion, from the totality of the circumstances, that Lundgren's conduct in the superior court was inconsistent with arbitration.

## PREJUDICE

Since the *Kinsey* court adopted prejudice as a distinct prong of the waiver test, some federal circuits have deemphasized it. The Seventh Circuit holds prejudice is "inherent in an effort to change forums in the middle . . . of a litigation," and merely invoking judicial process is therefore a presumptive waiver of a right to arbitrate.[17] That circuit has also held that "where it is clear that a party has forgone its right to arbitrate, a court may find waiver even if that decision did not prejudice the non-defaulting party."[18] Similarly, in the D.C. Circuit, "waiver may be found absent a showing of prejudice."[19] The majority of federal circuits hold, however, that they must see proof of prejudice to the objecting party before they will find waiver of a right to arbitrate.[20] In deciding the present case, we do not reconsider the appropriateness of the

---

[17]*Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Judge Posner, author of *Cabinetree*, notes, "Ours may be the minority position but it is supported by the principal treatise on arbitration." *Cabinetree*, 50 F.3d at 390 (citing 2 IAN R. MACNEIL, ET AL., FEDERAL ARBITRATION LAW: AGREEMENTS, AWARDS, AND REMEDIES UNDER THE FEDERAL ARBITRATION ACT § 21.3.3 (1994)).

[18]*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 590 (7th Cir. 1992).

[19]*National Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 777 (D.C. Cir. 1987).

[20]*See, e.g., Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) ("Given this dominant federal policy favoring arbitration, waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated."); *Fisher v. A.G. Becker Paribas, Inc.*, 791 F.2d 691, 694 (9th Cir. 1986); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 833 (2d Cir. 1988); *Miller Brewing Co. v. Fort*

requirement of prejudice adopted by *Kinsey* because we conclude that the trial court's ultimate finding of prejudice is not in error.

The trial court observed that delay "deprives the plaintiff of a result, either good or bad, and if the result is good, delay deprives the plaintiff of the award." The court found that Steele had to incur significant expense in justifiable resistance to Lundgren's discovery tactics, expense she would not have incurred if the matter had promptly proceeded in an arbitral forum. Based on counsel's billing records, the court determined that "$10,000 of the fees and costs are easily attributable to court-related litigation, and constitute significant prejudice to plaintiff."

Lundgren challenges the court's findings as to prejudice. He emphasizes that nothing dispositive has yet happened in superior court. At the time he moved to compel arbitration, the trial date in superior court was still eight months away. He essentially argues that Steele has given up nothing that she would not have given up in arbitration, and moving to an arbitral forum at this point would not involve efforts and expense duplicating what the parties have already litigated.

Lundgren relies principally on federal court decisions concluding that a party did not waive its contractual right to arbitration simply by conducting a limited amount of discovery in court. Perhaps the closest such case is the Fifth Circuit case of *Walker v. J.C. Bradford & Co.*[21] In *Walker*, 13 months elapsed between the plaintiffs' filing suit in State court and the defendant's motion to compel arbitration. During that time, the defendant removed the case to federal district court, made a preliminary discovery request to which the plaintiffs only partially responded, and answered the complaint. The court entered scheduling orders extending the time for completion of discovery. After the plaintiffs moved for a change of venue, the defend-

---

*Worth Distrib. Co.*, 781 F.2d 494, 496-97 (5th Cir. 1986); *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993).

[21]*Walker v. J.C. Bradford & Co.*, 938 F.2d 575 (5th Cir. 1991).

ant moved to compel arbitration. On these facts the Fifth Circuit found no waiver.[22] The same court did find waiver in *Price v. Drexel Burnham Lambert, Inc.*,[23] where the moving party "initiated extensive discovery, answered twice, filed motions to dismiss and for summary judgment, filed and obtained two extensions of pretrial deadlines, all without demanding arbitration."[24]

■ Since the finding as to prejudice is dependent on all the varying circumstances of the individual case, neither *Walker* nor other cases cited by Lundgren necessarily compel the same result in this case. Lundgren's contentious strategy in discovery sets him apart from the defendant in *Walker*.

At the same time, as noted previously, the record does not establish that Lundgren obtained through litigation information that he could not have obtained in arbitration. Thus the trial court's ultimate finding of prejudice rests on its findings of delay and expense, and these we examine to assure that substantial evidence supports them.

Lundgren, relying on the Second Circuit case of *Rush v. Oppenheimer & Co.*,[25] asserts that delay, by itself, does not support a determination of waiver. This observation in *Rush* arises from a series of federal cases involving the "intertwining doctrine" in which defendants were excused from their failure to invoke arbitration when first sued because until the Supreme Court changed the controlling law in the case of *Dean Witter Reynolds, Inc. v. Byrd*,[26] a motion to compel arbitration would have been futile. But the Second Circuit now acknowledges that delay amounts to prejudice when there is no good excuse for it:

[22]*Walker*, 938 F.2d at 577; *see also Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416 (5th Cir. 1985).

[23]*Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156 (5th Cir. 1986).

[24]*Price*, 791 F.2d at 1159.

[25]*Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985).

[26]*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, *or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense. See [Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1576 (2d Cir. 1991)]; Rush, 779 F.2d at 887-88.*

No bright line defines this second type of prejudice—neither a particular time frame nor dollar amount automatically results in such a finding—but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances.[27]

The Eleventh Circuit similarly has allowed a finding of prejudice grounded in delay and expense to support a determination of waiver.[28]

The trial court here found that the delay was unnecessary. This finding was supported by substantial evidence, and the evidence was "more than generalized protestations about the costs of delay."[29] Lundgren has not attempted to offer a reasonable excuse, such as a change in law, for waiting 10 months after filing suit to invoke his right to arbitration. And considering Lundgren's abusive discovery tactics, the period of delay "was not one in which information useful to the ultimate resolution of the dispute was being procured through discovery."[30] Lundgren's arguments go more to the degree of prejudice, a question more easily evaluated by a trial court, than to the existence of prejudice, an issue that we determine de

---

[27]*Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (emphasis added).

[28]*S&H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (eight-month interval between filing suit and arbitration demand; defense litigation included a motion to dismiss, opposition to a discovery motion; plaintiff took depositions of five employees of the defendant).

[29]*Walker*, 938 F.2d at 578.

[30]*Menorah Ins. Co. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995).

novo. Considering the sum total of Lundgren's conduct in the superior court, and the trial court's careful evaluation of the evidence as to time and money wasted, we agree with, and affirm, the trial court's finding that Steele was prejudiced.

Accordingly, we affirm the court's conclusion that Lundgren waived his right to arbitrate Steele's claim.

In her cross-appeal, Steele vigorously attacks the trial court's conclusion that she made an enforceable agreement to arbitrate when she signed the Form U-4. She argues that: (1) her constructive knowledge of the content of the Form U-4 is insufficient to show a knowing and voluntary waiver of her right to a jury trial of her claim; and (2) the Federal Arbitration Act does not preempt her state constitutional right to a jury trial. A leading treatise on arbitration has summarized the public policy concerns raised by Steele's arguments:

> [S]erious adhesion contract issues lurk in this area. Broad arbitration clauses are frequently offered by larger business concerns to individuals or small businesses on a "take-it-or-leave-it" basis. These adhesion contracts are not per se unconscionable, particularly where arbitration will occur in a neutral forum before unbiased arbitrators. But if the claim to be arbitrated involves statutory rights "related to" the contract, the continuing question is whether arbitration provides an adequate forum to vindicate those rights. Even if the arbitration process is generally adequate to the task, there is very limited judicial review of the merits of the award.[31]

It is unnecessary to address these concerns presently or to balance them against the advantages of arbitration. We express no opinion on the trial court's analysis of Steele's claim that she had a right to a jury trial notwithstanding the Form U-4 and the FAA. Our decision to affirm on the basis of Lundgren's waiver disposes of Steele's cross-appeal.

---

[31] 2 Ian R. Macneil, et al., Federal Arbitration Law: Agreements, Awards, and Remedies under the Federal Arbitration Act § 20.3.7 (1994) (citations and footnotes omitted).

Affirmed.

GROSSE and Cox, JJ., concur.

Review denied at 133 Wn.2d 1014 (1997).