JOSEPH TROVER, SR., Plaintiff-Appellee, v. 419 OCR, INC., *et al.*, Defendants-Appellants.

Fifth District   No. 5—09—0145

Opinion filed January 12, 2010.

Troy A. Bozarth, Wayne D. Skigen, and Debra S. Ward, all of Hepler-Broom LLC, of Edwardsville, for appellants.

Judy L. Cates, of Cates Law Firm, L.L.C., of Swansea, and David I. Cates, of Goldenberg Heller Antognoli & Rowland, P.C., of Edwardsville, for appellee.

JUSTICE SPOMER delivered the opinion of the court:

The defendants—419 OCR, Inc., O'Fallon Development Group, LLC (O'Fallon Group), Mark Halloran, and Steve Macaluso—appeal the March 30, 2009, order of the circuit court of St. Clair County denying their motion to compel arbitration under the Illinois Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2008)) and the Federal Arbitration Act (9 U.S.C. §§1 through 16 (2006)). For the following reasons, we affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

## FACTS

The plaintiff filed a five-count amended complaint on December 11, 2008. Factual allegations common to all the counts are as follows.

The plaintiff, individually and as the trustee of the Joseph E. Trover Revocable Trust u/t/a March 1, 1993, and Garrett Reuter, defendant Mark Halloran, and defendant Steve Macaluso were all members of a limited liability company known as Far Oaks Development Group, LLC (FODG), which owned land surrounding a golf course known as Far Oaks. The plaintiff, Reuter, and defendant Halloran were all members of a limited liability company known as Far Oaks Golf Club, LLC (the Golf Club). On or about October 6, 2005, the members of FODG met to discuss the development of the land owned by FODG and the tax consequences for each member if FODG were to be the "developer" of the land.

After some discussion, the plaintiff was advised by counsel that the plaintiff and the other members of FODG would benefit from a tax perspective if FODG transferred its land interest to defendant 419 OCR, Inc. (419 OCR), an Illinois corporation owned by defendants Halloran and Macaluso. The plaintiff, allegedly in reliance on the tax advice for FODG and the representations of defendant 419 OCR, agreed to allow FODG to sell and assign its interest in the land to defendant 419 OCR. The agreement to transfer the land allegedly included an oral promise by defendants Halloran and Macaluso, on behalf of defendant 419 OCR, to pay FODG, in addition to the estimated price of the lots on the land to be sold, an additional sum of money to be determined as the land was developed and the lots sold (the alleged oral contract). According to the amended complaint, the transfer agreement and the alleged oral contract were to be reduced to writing.

The plaintiff and other members of FODG then executed a document entitled "Unanimous Consent In Lieu of Special Meeting of the Members of Far Oaks Development Group, LLC" (Unanimous Consent), authorizing defendant Halloran, as the managing member, to transfer the land held by FODG to defendant 419 OCR. The document made no reference to the alleged oral contract. After the Unanimous Consent had been executed, defendant Halloran transferred the land to defendant 419 OCR. No written document evincing the alleged oral contract between FODG and defendant 419 OCR was ever completed. After receiving the transfer of the land from FODG, defendants 419 OCR, Halloran, and Macaluso developed the land, sold lots, and realized a profit.

Count I of the amended complaint, as a shareholder derivative action by the plaintiff on behalf of FODG, alleged a breach of contract against defendant 419 OCR in that defendant 419 OCR had not paid any money to FODG based on the sale of land as agreed between FODG and defendant 419 OCR. Count II of the amended complaint,

as a shareholder derivative action by the plaintiff on behalf of FODG, alleged a breach of contract against an entity known as the O'Fallon Group, in that the other defendants—419 OCR, Halloran, and Macaluso—had transferred parts of the land received from FODG to defendant O'Fallon Group, which due to a unity in ownership assumed obligations under the contract.

Count III of the amended complaint, as a shareholder derivative action brought by the plaintiff on behalf of FODG, alleged causes of action against defendants Halloran and Macaluso based on breaches of fiduciary duty and corporate waste. Count IV of the amended complaint, as a shareholder derivative action brought by the plaintiff on behalf of the Golf Club against defendant Halloran, was brought to recover damages sustained as a result of breaches of fiduciary duty and corporate waste.

In count V of the amended complaint, the plaintiff alleged fraud by defendants Halloran and Macaluso, individually. Count V specifically alleged that defendants Halloran and Macaluso, at the time they met with the other members of FODG and the Golf Club regarding the sale and transfer of the land to defendant 419 OCR, falsely represented that money raised from the sale of the land owned by FODG would be transferred from FODG to the Golf Club to be used to pay down the debt owed on the golf course.

The defendants filed a motion to compel arbitration on February 9, 2009, arguing that because the operating agreements governing FODG and the Golf Club both contain broadly worded arbitration provisions which extend to the plaintiff's claims and because those claims are based on transactions undertaken by FODG and the Golf Club, of which the plaintiff and defendants Halloran and Macaluso are comembers, as well as on actions performed by Halloran and Macaluso on behalf of the limited liability companies (LLCs), the claims must be submitted to binding arbitration. The trial court entered an order on March 30, 2009, denying the defendants' motion to compel arbitration. The defendants filed a notice of interlocutory appeal on April 2, 2009. Additional facts will be provided where necessary throughout the remainder of this opinion.

## ANALYSIS

"The standard of review for a decision on a motion to compel arbitration is whether there was a showing sufficient to sustain the trial court's order." *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 981 (2005). "If a trial court renders its decision without an evidentiary hearing and without findings on any factual issue, *de novo* review is appropriate." *Hubbert*, 359 Ill. App. 3d at 981. In this case, no

evidentiary hearing was held, nor did the trial court make any findings of fact in its order. Accordingly, we apply a *de novo* standard of review.

"It was intended, under the Uniform Arbitration Act, on an application to compel or stay arbitration, under section 2 of the Act, that the sole question for the court to determine is whether there was an agreement to arbitrate." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 449 (1988). "If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration." *Donaldson*, 124 Ill. 2d at 449. "If it is clear that it does not, arbitration should be refused." *Donaldson*, 124 Ill. 2d at 449. The operating agreements in this case are essentially the same, with identical arbitration clauses. These clauses provide in relevant part as follows: "Any controversy, dispute[,] or claim between the parties arising out of, related to[,] or in connection with this Agreement or the performance or breach hereof shall be submitted to and settled by arbitration ***." Accordingly, the first issue requiring a resolution is whether the dispute in question falls under the scope of the operating agreements of FODG and the Golf Club, which contain the arbitration provisions.

A review of the operating agreements reveals much more than the mere formation of the LLCs. Each agreement exceeds 22 pages and covers everything from offices and meetings to fiscal matters and the transfers of assets. Following the meeting between the members of FODG regarding the subject land transaction and the potential tax consequences thereof, the Unanimous Consent was written and signed by FODG's members, pursuant to article II, section 2.10, of FODG's operating agreement. The Unanimous Consent referenced the operating agreement two times in its opening paragraph, and pursuant to article VII, section 7.3(a)(5), of the operating agreement, it granted defendant Halloran, as the managing member, the authority to transfer the subject property owned by FODG to defendants Halloran and Macaluso on behalf of defendant 419 OCR. Because the authority and procedure for land transactions are delineated in the operating agreements, we find that the subject land transaction is within the scope of those agreements.

It is well settled in Illinois that "[a] nonparty to an arbitration agreement can neither compel arbitration nor be compelled to arbitrate." *Jacob v. C&M Video, Inc.*, 248 Ill. App. 3d 654, 659 (1993). "[T]he status of a person or entity entitled to compel arbitration is determined from the language of the agreement giving rise to the arbitration." *Jacob*, 248 Ill. App. 3d at 659. Having found that the

dispute in the instant case is under the scope of the operating agreements, we must next determine whether each of the five counts of the amended complaint is arbitrable.

■ Counts I and II are shareholder derivative actions by the plaintiff, on behalf of FODG, against defendant 419 OCR and defendant O'Fallon Group, respectively, for breaches of contract. As defense counsel conceded at oral argument, defendants 419 OCR and O'Fallon Group are not parties to the operating agreements and therefore cannot enforce the arbitration clauses therein. Accordingly, the trial court did not err in denying the motion to compel arbitration on counts I and II, which were directed toward these defendants.

■ Count III is a shareholder derivative action by the plaintiff, on behalf of FODG, against defendants Halloran and Macaluso for breaches of fiduciary duty. Count IV is a shareholder derivative action by the plaintiff, on behalf of the Golf Club, against defendant Halloran, also for a breach of fiduciary duty. In order to determine whether the trial court erred in denying the motion to compel on counts III and IV, we must first determine whether an LLC is considered a party to and thereby bound by the terms of the operating agreement that created the LLC.

This is an issue of first impression in Illinois. The defendants cite *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286 (Del. 1999), a Delaware Supreme Court case which addresses a matter also of first impression in that state on the same issue. In *Jaffari*, a certificate of formation was filed, creating an LLC. 727 A.2d at 288. Subsequently, a series of agreements provided for the governance of the LLC. *Jaffari*, 727 A.2d at 288. The agreement at issue contained an arbitration clause that covered all disputes. *Jaffari*, 727 A.2d at 288. The *Jaffari* court concluded that the LLC was bound to arbitrate, even though it was not a signatory to the agreement containing the arbitration clause. 727 A.2d at 293. The court specified that the members of the LLC were the real parties and that the LLC was simply the joint business vehicle for the members. *Jaffari*, 727 A.2d at 293.

Illinois law and the facts in our case require a different result. The arbitration clause at issue specifies that the controversy must be *"between the parties."* (Emphasis added.) Section 5—1(c) of the Illinois Limited Liability Company Act (Act) states, ''A limited liability company is a legal entity distinct from its members.'' 805 ILCS 180/5—1(c) (West 2006). Section 1—30(1) of the Act provides that a limited liability company has the power to sue and to be sued. 805 ILCS 180/1—30(1) (West 2006).

The operating agreements provide that they are by and among the plaintiff, defendant Halloran, and Union Planters Trust Company, as

a trustee for the benefit of Garrett C. Reuter, which is evidenced by their signatures at the end of the agreements. None of the members signed the agreements in a way that purports to bind the LLCs. Moreover, neither LLC is referenced in any manner on the signature page of either agreement. Notably, article VII, section 7.3(a)(5), of both operating agreements gives the managing member the authority to "sign, on behalf of the Company, such deeds, mortgages, bonds, contracts[,] or other instruments that have been appropriately authorized to be executed by the Members." Thus, the drafters of the agreements understood what procedure was necessary to contractually bind the LLCs. To hold that the agreements bound the LLCs absent a designation from defendant Halloran that he was signing on behalf of the LLCs would be to render these provisions granting the authorization to Halloran meaningless and unnecessary. Moreover, section 40—1 of the Act gives a member of an LLC the authority to bring an action on behalf of the LLC if members or managers with the authority to do so have refused to bring the action or if an effort to influence those members or managers to do so is unlikely to succeed. 805 ILCS 180/40—1 (West 2006).

In the case at bar, neither FODG nor the Golf Club was a party to the operating agreements. Because the derivative counts brought by the plaintiff are against defendants Halloran and Macaluso, both of whom are fellow members of both LLCs, it is unlikely that either Halloran or Macaluso would have brought the same derivative actions on behalf of the LLCs, naming themselves as defendants. In light of the statutory guidelines, as well as the fact that the operating agreements do not reveal that the signatories were signing on behalf of or in the name of the LLCs, we find that neither FODG nor the Golf Club was a party to the operating agreements and that they are therefore not bound by the arbitration clauses therein. Accordingly, the trial court did not err in denying the motion to compel arbitration on counts III and IV.

■ Count V is a fraud action brought by the plaintiff against defendants Halloran and Macaluso, individually. The plaintiff and defendant Halloran both signed the operating agreements and are thereby bound by their terms. Therefore, the action between the plaintiff and defendant Halloran is arbitrable.

Regarding the action between the plaintiff and defendant Macaluso, although Macaluso was not an original signatory member of the operating agreements, he signed two share-transfer agreements on April 15, 2004, by which he purchased 100 shares of each LLC from the plaintiff. Section 30—10(b) of the Act provides, "A transferee who has become a member *** has the rights and powers, and is subject to

the restrictions and liabilities, of a member under the operating agreement of a limited liability company and this Act." 805 ILCS 180/30—10(b) (West 2006). All the rights and restrictions of a member under the operating agreements were bestowed upon defendant Macaluso by operation of law when he purchased the shares of the LLCs on April 15, 2004. Therefore, he has the right to enforce the arbitration provisions of the operating agreements. Accordingly, the trial court erred in denying the motion to compel arbitration on count V.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order with respect to counts I, II, III, and IV, we reverse with respect to count V, and we remand for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

CHAPMAN and STEWART, JJ., concur.