**NOTICE: SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion. Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision. Slip opinions can be changed by subsequent court orders. For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion. Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports. An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.** The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports. Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JOEL BERMAN, individually and on behalf of TIERRA REAL ESTATE GROUP, LLC, a Washington limited liability company, BOYDEN INVESTMENT GROUP LLC, a Washington limited liability company, and PHAT SACKS CORP., a Washington corporation,<br><br>     Respondents,<br><br>   v.<br><br>TIERRA REAL ESTATE GROUP, LLC, a Washington limited liability company, BOYDEN INVESTMENT GROUP LLC, a Washington limited liability company, TODD SHIRLEY, an individual, RYAN KUNKEL and SOKHA KUNKEL, husband and wife and the marital community thereof, CHARLES BOYDEN and STEPHANIE BOYDEN, husband and wife and the marital community thereof,<br><br>     Appellants,<br><br>GREEN OUTFITTERS, LLC, a Washington limited liability company, PHAT SACKS CORP., a Washington corporation, and HAVE A HEART COMPASSION CARE INC., a Washington corporation,<br><br>     Defendants. | DIVISION ONE<br><br>No. 83311-1-I<br><br>PUBLISHED OPINION |

No. 83311-1-I/2

DWYER, J. — Boyden Investment Group, LLC (BIG), Tierra Real Estate Group, LLC (TREG), and members of these entities, Ryan Kunkel, Charles Boyden, and Todd Shirley, appeal from an order denying in part their motion to compel arbitration of an investment dispute with another member, Joel Berman. The trial court compelled arbitration as to Berman's individual claims against individual appellants, but declined to do so as to Berman's derivative claims on behalf of the entities and Berman's individual claims against the entities. Because limited liability companies are bound by arbitration agreements found in their operating agreements and Berman's claims fall within the scope of the arbitration agreements, we reverse.

I

Respondent Joel Berman is a minority owner of three limited liability companies that own and operate retail cannabis stores: Tierra Real Estate Group, LLC (TREG), Boyden Investment Group, LLC (BIG), and Phat Sacks Corp. The other owners, individual appellants Todd Shirley, Ryan Kunkel, and Charles Boyden, also own part of two other entities: Green Outfitters, LLC and Have a Heart Compassion Care Inc., LLC. In August 2017, the individual appellants formed a new corporation, Interurban Capital Group, Inc. (ICG), to coordinate management services between all retail stores of the five entities and to facilitate expansion. Berman received shares of ICG at its inception. In April 2018, under a so-called "Sublease Agreement" Berman agreed to exchange approximately half of his shares of ICG for $35,000 per month until ICG acquired all of the planned retail stores.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In March 2020, ICG was acquired by another company, Harvest Health & Recreation, Inc. Harvest stopped making monthly payments to Berman. Harvest also had an unrelated dispute with ICG resulting in litigation, which was settled on December 31, 2020. Berman objected to the settlement.

In March 2021, Berman filed a complaint against the five entities for breach of the "Sublease Agreement." In August 2021, Berman, represented by new counsel, amended his complaint, adding the individual managers as defendants and bringing eight additional causes of action based on alleged wrongdoing related to the merger and settlement agreement: promissory estoppel, breach of operating agreement, unjust enrichment, tortious interference with contract, breach of fiduciary duty, declaratory relief, civil conspiracy, and dissolution. Several claims were brought on behalf of Berman individually, whereas several were brought derivatively on behalf of the entities of which he is a member, BIG and TREG.

Various defendants moved to compel arbitration based on arbitration clauses within either the BIG or TREG operating agreement, as applicable. The trial court compelled arbitration on some, but not all, of Berman's claims. The trial court determined that Berman's individual claims for breach of fiduciary duty and civil conspiracy brought against the individual appellants were arbitrable under the respective operating agreements but that his identical derivative claims on behalf of BIG and TREG were not. In addition, the trial court did not compel arbitration of Berman's personal civil conspiracy claims against BIG and TREG.

TREG, BIG, Shirley, Kunkel, and Boyden appeal.

No. 83311-1-I/4

II

As an initial matter, we must determine whether limited liability companies themselves are bound by arbitration clauses in their operating agreements. Because Washington law provides that limited liability company agreements govern the relations between the limited liability company and the members, we conclude that the entities are so bound.

A limited liability company is a flexible business structure that is authorized by statute. Chadwick Farms Owners Ass'n v. FHC LLC, 166 Wn.2d 178, 186-87, 207 P.3d 1251 (2009). Washington's limited liability company act (WLLCA) provides that "the limited liability company agreement governs . . . [r]elations among the members as members *and between the members and the limited liability company.*" RCW 25.15.018(1)(a) (emphasis added). Accordingly, to the extent that the claims at issue fall within the scope of the arbitration agreement, both the members and the limited liability company are bound by it, regardless of whether they are parties to the agreement. An agreement to arbitrate appearing in the operating agreement sets forth the manner in which relations between the members and the limited liability company will be governed.

This view is consistent with the approach taken by the Uniform Limited Liability Company Act (ULLCA), which specifically provides that "[a] limited liability company is bound by and may enforce the operating agreement, whether or not the company has itself manifested assent to the operating agreement." UNIF. LTD. LIAB. CO. ACT § 106(a) (amended 2013), 6C U.L.A. 1, 40 (2016). As Washington's act was substantially modeled on the ULLCA, we may look to the

4

No. 83311-1-I/5

ULLCA to assist in our interpretation.  Dragt v. Dragt/DeTray, LLC., 139 Wn. App. 560, 575, 161 P.3d 473 (2007).

The parties urge us to look to opinions which interpret the limited liability company statutes of other states.  Appellants point to Elf Atochem North America, Inc. v. Jaffari, 727 A.2d 286 (Del. 1999).  In Elf, the Delaware Supreme Court determined that, under Delaware limited liability company law, a limited liability company is bound by its operating agreement and derivative claims brought on its behalf are subject to arbitration and forum selection clauses of the agreement because "[i]t is the members who are the real parties in interest."  727 A.2d at 293.  For his part, Berman responds with two opinions that reach the opposite conclusion, both of which have been superseded by statute in their respective states (Illinois and Virginia), Trover v. 419 OCR, Inc., 397 Ill. App. 3d 403, 921 N.E.2d 1249, 1254 (2010) and Mission Residential, LLC v. Triple Net Properties, LLC, 275 Va. 157, 654 S.E.2d 888, 891 (2008).[1]

But Washington limited liability companies are created and governed by Washington law.  As we have explained, Washington law directly addresses this issue.  We thus have no need to consult opinions interpreting the statutes of other states.  Under WLLCA, an arbitration provision in a limited liability company's operating agreement binds the limited liability company in addition to

---

[1] Under current Illinois law, "[a] limited liability company is bound by and may enforce the operating agreement, whether or not the company has itself manifested assent to the operating agreement."  805 ILL. COMP. STAT. ANN. 180/15-5(f).  Virginia also amended its statute following its high court's decision in Mission Residential, and its statute now provides that "[a] limited liability company is bound by its operating agreement whether or not the limited liability company executes the operating agreement."  VA. CODE. ANN. § 13.1-1023(A)(1).

5

No. 83311-1-I/6

the members.  Thus, BIG and TREG are each bound by the arbitration clauses in their own operating agreements.

III

We review de novo a trial court's decision to compel or deny arbitration. Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 46, 470 P.3d 486 (2020). "'Courts resolve the threshold legal question of arbitrability of the dispute by examining the arbitration agreement without inquiry into the merits of the dispute.'"  Marcus & Millichap Real Estate Inv. Servs. of Seattle, Inc. v. Yates, Wood & MacDonald, Inc., 192 Wn. App. 465, 474, 369 P.3d 503 (2016) (quoting Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 403, 200 P.3d 254 (2009)).

Arbitration is a matter of contract and, therefore, parties cannot be compelled to arbitrate unless they have agreed to do so.  Healy v. Seattle Rugby, LLC, 15 Wn. App. 2d 539, 587, 476 P.3d 583 (2020).  The purpose of contract interpretation is to ascertain the intent of the parties.  Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012).  Washington courts "follow the objective manifestation theory of contracts."  Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005).  Under this approach, courts "focus on the agreement's objective manifestations to ascertain the parties' intent."  Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227 (2016).  When considering the language of a written agreement, we "impute an intention corresponding to the reasonable meaning of the words used."  Hearst

6

No. 83311-1-I/7

Commc'ns, Inc., 154 Wn.2d at 503 (citing Lynott v. Nat'l Union Fire Ins. Co. of

Pittsburgh, 123 Wn.2d 678, 684, 871 P.2d 146 (1994)).

Washington courts apply a "'strong presumption in favor of arbitrability,'"

and "'[d]oubts should be resolved in favor of coverage.'" Peninsula Sch. Dist. No.

401 v. Pub. Sch. Emps. of Peninsula, 130 Wn.2d 401, 414, 924 P.2d 13 (1996)

(quoting Council of County & City Emps. v. Spokane County, 32 Wn. App. 422,

424-25, 647 P.2d 1058 (1982)). "If the dispute can fairly be said to invoke a

claim covered by the agreement, any inquiry by the courts must end." Heights at

Issaquah Ridge, 148 Wn. App. at 403. "'[A]ll questions upon which the parties

disagree are presumed to be within the arbitration provisions unless negated

expressly or by clear implication.'" Peninsula Sch. Dist, 130 Wn.2d at 414

(quoting Council of County & City Emps., 32 Wn. App. at 424-25).

Both the BIG operating agreement and the TREG operating agreement

contain agreements to arbitrate. Appellants contend that (1) the TREG

operating agreement requires that Berman's derivative claims on behalf of TREG

be arbitrated, (2) the BIG operating agreement requires that Berman's derivative

claims on behalf of BIG be arbitrated, and (3) Berman's individual claims against

BIG and TREG be arbitrated, based on the respective agreements.

A

Appellants contend that BIG's derivative claims fall within the scope of the

arbitration clause in its operating agreement. We agree.

The provision at issue states, in its entirety:

14.12. Dispute Resolution; Venue. *It is the intention of the parties to
bring all disputes between or among any of them to an early,*

7

*efficient and final resolution. Therefore, it is hereby agreed that all disputes, claims and/or otherwise, including without limitation management, contract, quasi contract, equitable claims, tort claims, statutory claims or any other kind of controversy, claim or dispute shall be resolved first by non-binding mediation and arbitration as provided herein.* Notwithstanding the foregoing, nothing herein shall preclude any party from applying to a court of competent jurisdiction for preliminary injunctive relief or a temporary restraining order or other preliminary relief as may be required. *All disputes arising among the Members with respect to Company matters shall be resolved by mediation in the following manner.* Mediation shall be initiated by any Member by written request to Members for selection of a mediator which requests (the "Mediation Request") shall identify the matters to be mediated. Such mediation shall occur in the State of Washington or such other location as the parties may agree. The mediator shall be an independent third party determined by mutual agreement of the disputing Members. Costs and expenses of the mediator shall be borne by the party that initiates the mediation. *In the event that the Members are unable to reach agreement through mediation, then such dispute arising among the Members shall be resolved by arbitration in the following manner.* Such arbitration shall occur in accordance with the rules of the American Arbitration Association ("AAA") then in effect, in the State of Washington or such other location as the parties may agree. The arbitration panel shall consist of one individual selected by each party. Any decision of the arbitrator may be appealed de novo and the Members irrevocably agree the venue of any action or proceeding appealing a decision of the arbitrator shall be in Spokane County, Washington. Each Member irrevocably submits to the jurisdiction of the courts in Spokane County, Washington, in any action or proceeding appealing a decision of the arbitrator.

(Emphasis added.)

BIG is a party to the agreement: a representative of BIG signed the agreement on behalf of the entity. The claims at issue are breach of fiduciary duty and civil conspiracy based on the individual appellants' alleged wrongdoing. Appellants assert that the broad language at the beginning of the quoted provision clearly expresses that all parties to the agreement, including BIG, will be bound to arbitration in all disputes between them. Berman counters that,

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

despite the broad language at the beginning of the provision, the provision is only applicable to disputes arising between the members. Appellants have the better argument. The expressly stated intent of the parties is to "bring all disputes between or among any of them to an early, efficient and final resolution" by resolving "all disputes, claims and/or otherwise, including without limitation management, contract, quasi contract, equitable claims, tort claims, statutory claims or any other kind of controversy, claim or dispute . . . by non-binding mediation and arbitration as provided [in the agreement]." This unambiguously indicates an intent to arbitrate all disputes between the parties, including BIG.

Furthermore, even if we found the scope of the agreement to be ambiguous, we would presume that the claims are within the scope of the provision unless they were "'negated expressly or by clear implication.'" Peninsula Sch. Dist., 130 Wn.2d at 414 (quoting Council of County & City Emps., 32 Wn. App. at 424-25). There is no express negation and the later language regarding disputes between members does not clearly imply that disputes between BIG itself and its members are not subject to arbitration.

Additionally, even to the extent that the agreement can be read to only cover disputes between members, the present dispute is entirely among the members of BIG. Berman, a member, believes that the other members' actions constituted a breach of fiduciary duty and civil conspiracy. The other members of BIG disagree. That Berman's claims are derivative on behalf of the entity does not transform the dispute into one that is not between the members. This is made especially clear when, as here, Berman makes identical claims on behalf

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of himself.  As the dispute is one which can be fairly said to invoke a claim

covered by the agreement, we conclude that Berman's derivative claims are

arbitrable and that the trial court erred by denying appellants' motion to compel

arbitration as to these claims.

B

Appellants next contend that Berman's derivative claims on behalf

of TREG fall within the scope of the arbitration clause in TREG's operating

agreement.  Again, we agree.

The relevant provision in TREG's operating agreement states:

> 12.5. **Arbitration.** Any dispute or controversy arising under, out of,
> in connection with or in relation to this Agreement, any
> amendments hereof or any breach hereof, or in connection with
> dissolution of the Company, shall be determined and settled by
> arbitration to be held in Seattle, Washington in accordance with the
> provisions of Washington law, and, with respect to such matters not
> covered therein, by the Rules of the American Arbitration
> Association; provided, however, that in the event of any conflict
> between such statute and such rules, the provisions of the statute
> shall control; and provided further, that notwithstanding anything in
> such statute or rules to the contrary, the arbitrator shall make his or
> her decision and award according to the terms and provisions of
> this Agreement and the applicable law, and such award shall set
> forth findings of fact and conclusions of law of the arbitrator upon
> which the award is based in the same manner as is required in a
> trial before a judge of a court of the State of Washington. The
> arbitrator shall, in his or her discretion, award attorney fees to the
> substantially prevailing party. Judgment upon the award may be
> entered in any court of competent jurisdiction in the State of
> Washington for King County.

The claims here at issue are the same as those discussed in the

previous section: breach of fiduciary duty and civil conspiracy based on

the individual appellants' alleged wrongdoing.  These claims clearly fall

within the very broad language of the agreement ("arising under, out of, in

10

connection with or in relation to this Agreement"). Each individual

appellant's fiduciary duties to TREG arises from a relationship authorized

by the agreement, and thus a claim for breach of fiduciary duty is related

to the agreement. See McClure v. Davis Wright Tremaine, 77 Wn. App

312, 315, 890 P.2d 466 (1995) ("relating to" an agreement is broad

enough language to include a claim for breach of fiduciary duty which

arises as a result of a partnership authorized by the agreement). The civil

conspiracy claims are based on the same allegations and are also related

to the agreement. Indeed, Berman's assertion that the claims are not

arbitrable is based entirely on the notion that TREG is not bound by the

agreement, not that the claims are outside of its scope. But as we have

explained, TREG is bound by the arbitration clause in its own operating

agreement.

As the claims at issue fall within the scope of the arbitration clause,

the trial court erred by denying appellants' motion to compel arbitration of

these claims.

C

Appellants next assert that any individual claims Berman has

against TREG and BIG fall within the arbitration agreements. The claims

at issue are Berman's civil conspiracy claims against the entities.

Berman's civil conspiracy claims against the entities are based on the

identical allegations as his derivative claims for civil conspiracy on behalf of the

entities against the individual appellants. For the same reasons that Berman's

11

derivative claims on behalf of the entities for civil conspiracy fall within the scope of each arbitration agreement, so do his individual claims against each of the entities for the same alleged civil conspiracy that fall within the scope of the agreements.  The claim against BIG falls within the BIG arbitration clause both because it is a dispute between parties to the agreement and because it is a dispute between members.  The claim against TREG falls within the TREG agreement because it is related to the TREG agreement.

Thus, Berman's civil conspiracy claim against BIG is arbitrable under the BIG operating agreement and his civil conspiracy claim against TREG is arbitrable under the TREG operating agreement.

### D

Finally, Berman contends that even if the claims are arbitrable, appellants have waived arbitration. We disagree.

We review de novo whether an agreement to arbitrate has been waived. Romney v. Franciscan Med. Grp., 199 Wn. App. 589, 602, 399 P.3d 1220 (2017) (citing Steele v. Lundgren, 85 Wn. App. 845, 850, 935 P.2d 671 (1997)).  Waiver of a contractual right to arbitration is disfavored, and a party seeking to establish such a waiver has a "'heavy burden of proof." Steele, 85 Wn. App. at 852 (internal quotation marks omitted) (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)).  To establish waiver, the party opposing arbitration must demonstrate that the opponent (1) had knowledge of the existing right to compel arbitration, (2) acted inconsistently with that right, and (3) those inconsistent acts prejudiced the party opposing arbitration.  Romney, 199 Wn.

No. 83311-1-I/13

App. at 601-02. Whether a party has waived its right by its conduct depends on the particular facts of the case and is not susceptible to bright line rules. Romney, 199 Wn. App at 602 (quoting Canal Station N. Condo. Ass'n v. Ballard Leary Phase II, LP, 179 Wn. App. 289, 298, 322 P.3d 1229 (2013)).

Berman contends that appellants waived arbitration by litigating for five months, including actions such as moving to dismiss his initial complaint for failure to state a claim and serving him with discovery. However, these actions took place before Berman amended his complaint to include the arbitrable claims here at issue. At the time, Berman's only claim was a violation of the "Sublease Agreement," which appellants have not sought to arbitrate. Appellants moved to compel arbitration within 30 days of Berman's amended complaint being filed. This motion was timely.

Because appellants did not, with full knowledge of their right to arbitrate, act inconsistently with an exercise of that right, no examination is necessary of the question of whether Berman will be prejudiced by arbitrating the claims at issue. The appellants did not waive their right to arbitrate the claims.

Reversed and remanded.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83311-1-I/14

WE CONCUR:

Brennan, J.    Smith, A.C.J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 83311-1-I/14

14