[No. 66137-0-I.   Division One.   July 30, 2012.]

LAWRENCE HILL ET AL., *Individually and on Behalf of All Persons Similarly Situated, Respondents*, v. GARDA CL NORTHWEST, INC., *Petitioner.*

686

*Clarence M. Belnavis* (of *Fisher & Phillips LLP*), for petitioner.

*Daniel F. Johnson* and *Annette M. Messitt* (of *Breskin Johnson & Townsend PLLC*) and *Martin S. Garfinkel* and *Adam J. Berger* (of *Schroeter Goldmark & Bender*), for respondents.

¶1 Leach , C.J. — A court may not require a party to submit to class arbitration unless the party agreed to do so.[1] Because the arbitration agreements central to this appeal are silent on the issue, the trial court erred by ordering the parties to submit their dispute to class arbitration. We reverse the trial court's order compelling class arbitration and remand for arbitration on an individual basis.

## FACTS

¶2 Garda CL Northwest Inc. is an armored transport company that employs over 100 armored truck crew members across Washington state. In February 2009, Lawrence Hill, Adam Wise, and Robert Miller (collectively employees) filed a class action lawsuit on behalf of themselves and others who worked for Garda as armored truck drivers in the state of Washington.[2] The complaint alleged that Garda altered employee time records in order to reduce wages, denied employees meal and rest breaks, and failed to pay employees for "off-clock" work.

¶3 The applicable collective bargaining agreements required Garda employees to grieve and arbitrate "any claim under any federal, state, or local law . . . related to the employment relationship." In its April 2009 answer, Garda asserted that the employees' claims "must be resolved by arbitration" under the dispute resolution provisions of these

---

[1] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010).

[2] The putative class consisted of "[a]ll people who have been employed by Garda CL Northwest or its predecessor to work on armored trucks in the State of Washington and who, at any time between February 11, 2006 and the present, performed work that was not paid, and/or were denied meal and/or rest breaks."

agreements. Garda, however, did not move to compel arbitration for more than a year. In the meantime, the parties engaged in discovery. Then, toward the end of 2009, Garda and the employees "delayed significant investment in prosecuting and defending the case" during the adjudication of *Pellino v. Brink's, Inc.*,[3] which presented similar claims regarding meal and rest breaks.

¶4 After a trial court issued a decision for the *Pellino* class in January 2010, Garda and the employees discussed settlement but did not reach an agreement. The employees moved for class certification in March 2010. Garda agreed to engage in mediation, but those efforts also failed. At Garda's request, the hearing on class certification was renoted three times. Then, on July 1, Garda moved to compel arbitration. The trial court heard the class certification motion on July 16 and certified the plaintiff class on July 23. At the hearing on Garda's motion to compel, the trial court ordered supplemental briefing on its authority to order class arbitration.

¶5 In its supplemental briefing, Garda asserted that the arbitrator, not the court, should decide whether the parties agreed to class arbitration and requested that the trial court order arbitration on an individual basis. The employees contended that the arbitration agreements were unenforceable because Garda waived the right to seek arbitration by engaging in litigation for 19 months before filing its motion to compel, the employees did not clearly and unmistakably waive the right to a judicial forum, and certain provisions in the arbitration agreement were unconscionable. The trial court ordered class arbitration, stating, "[T]he court, in light of its prior decision to certify a class, believes that it has the authority to compel arbitration as a class."

¶6 The parties filed cross motions for discretionary review in this court. A commissioner of this court granted discretionary review.

---

[3] 164 Wn. App. 668, 676, 267 P.3d 383 (2011).

## STANDARD OF REVIEW

¶7 We review de novo a trial court's decision to grant a motion to compel arbitration.[4] The party opposing arbitration bears the burden of demonstrating that the agreement is unenforceable.[5] We also review de novo the issue of waiver, applying the legal test for waiver to the facts established in the trial court.[6]

## ANALYSIS

¶8 We begin with the employees' cross appeal. If, as the employees claim, the arbitration agreements are unenforceable, we need not reach the issue raised by Garda's appeal. The employees claim the arbitration agreements are unenforceable for three reasons: (1) Garda waived its contractual right to arbitration, (2) the employees did not "clearly and unmistakably" waive their rights to a judicial forum, and (3) the arbitration agreements are unconscionable. We conclude the third ground does not merit discretionary review under RAP 2.3(b)(4) and do not consider it.[7] Because we find the remaining grounds meritless, the arbitration agreements are enforceable.

¶9 The employees first claim that Garda waived its right to arbitration by engaging in 19 months of litigation before filing the motion to compel. A party may waive its contractual right to arbitrate.[8] In this context, "[w]aiver is the 'voluntary and intentional relinquishment of a known

---

[4] *Satomi Owners Ass'n v. Satomi, LLC,* 167 Wn.2d 781, 797, 225 P.3d 213 (2009).

[5] *Satomi,* 167 Wn.2d at 797.

[6] *Steele v. Lundgren,* 85 Wn. App. 845, 850, 935 P.2d 671 (1997).

[7] In granting discretionary review, the commissioner permitted the parties to brief the unconscionability issue, even though it did not merit discretionary review, stating, "The panel of judges that considers the appeal on the merits will be in the best position to determine which issues it will address."

[8] *Ives v. Ramsden,* 142 Wn. App. 369, 382-83, 174 P.3d 1231 (2008).

right.' "[9] A party waives the right to arbitrate by " 'conduct inconsistent with any other intention but to forego that right.' "[10] " '[A] party to a lawsuit who claims the right to arbitration must take some action to enforce that right within a reasonable time.' "[11] However, "waiver of a contractual right to arbitration is disfavored, and a party seeking to prove waiver has 'a heavy burden of proof.' "[12] Whether waiver has occurred depends on the facts of the case; our determination is not susceptible to bright line rules.[13]

█ ¶10 The employees allege that Garda acted inconsistently with arbitration by participating in discovery and in motions practice, taking depositions of the named plaintiffs, and moving for summary judgment. We disagree. The record demonstrates that during the relevant period, the parties were largely attempting to resolve their dispute through means alternative to litigation. In late 2009 and early 2010, the parties put the case on hold while awaiting a decision in *Pellino*. From January to March, Garda and the employees explored settlement options. During that time, they filed a joint stipulation and motion to continue the trial date to December 2, stating, "Plaintiffs and Garda agree that this stipulation and motion is made without prejudice to Garda's position . . . that this matter is properly subject to arbitration under the applicable Labor Agreements." Shortly after the employees moved for class certification, Garda agreed to mediation, and the class certifi-

---

[9] *Ives*, 142 Wn. App. at 383 (quoting *Lake Wash. Sch. Dist. No. 414 v. Mobile Modules Nw., Inc.*, 28 Wn. App. 59, 61, 621 P.2d 791 (1980)).

[10] *Ives*, 142 Wn. App. at 383 (quoting *Shoreline Sch. Dist. No. 412 v. Shoreline Ass'n of Educ. Office Emps.*, 29 Wn. App. 956, 958, 631 P.2d 996 (1981)).

[11] *Otis Hous. Ass'n v. Ha*, 165 Wn.2d 582, 588, 201 P.3d 309 (2009) (quoting *Mobile Modules*, 28 Wn. App. at 64).

[12] *Steele*, 85 Wn. App. at 852 (internal quotation marks omitted) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)).

[13] *Steele*, 85 Wn. App. at 853.

cation hearing was postponed.[14] In an e-mail discussing the preparations for mediation, the employees' lawyer indicated, "We . . . remain willing to give serious and good faith consideration to a comprehensive proposal for arbitration, should mediation fail. However, we are not prepared to make a decision on arbitration vs. litigation prior to mediation." In June, Garda substituted counsel and deposed the named plaintiffs. Finally, Garda moved to compel arbitration on July 10, arguing in the alternative that the trial court should grant it partial summary judgment. Because the delay in filing the motion to compel resulted in part from an effort to resolve this case without resorting to litigation and Garda asserted its arbitration rights in its answer, we do not find Garda's acts to be inconsistent with arbitration.[15]

¶11 The cases the employees cite do not persuade us otherwise. In *Steele v. Lundgren*,[16] we held that an employer waived his right to arbitrate a former employee's discrimination claim after the employer engaged in litigation for 10 months. The employer did not assert his right to arbitration during any of the "obvious opportunities," including in the answer, at the time the employee amended her complaint, at the time of substitution of counsel, at the time the case was assigned to an individual calendar, or at the time of filing a confirmation of joinder.[17] Additionally, the employer engaged in " 'overly aggressive' " discovery.[18] On the whole, the employer's conduct demonstrated that he

---

[14] The hearing was renoted two additional times—once so that counsel could go on a planned vacation and the second time so that Garda could depose the named plaintiffs.

[15] *See Steele*, 85 Wn. App. at 854 ("Settlement is favored in public policy. Parties should be able to pursue settlement at any time without being viewed as acting inconsistently with arbitration.").

[16] 85 Wn. App. 845, 847, 935 P.2d 671 (1997).

[17] *Steele*, 85 Wn. App. at 853-55.

[18] *Steele*, 85 Wn. App. at 854.

was "weigh[ing] his options."[19] We held that under the totality of the circumstances, the employer's actions were inconsistent with arbitration and affirmed the trial court's finding that the employer waived its right to arbitrate the dispute.[20]

¶12 In *Ives v. Ramsden*,[21] Ramsden "answered the complaint, engaged in extensive discovery, deposed witnesses, submitted and answered interrogatories, and prepared fully for trial." More than three years later, "on the eve of trial, Ramsden argued for the first time that the arbitration agreement foreclosed trial."[22] Division Two of this court held that Ramsden's behavior was inconsistent with arbitration.[23] In *Naches Valley School District No. JT3 v. Cruzen*,[24] Division Three of this court held that a party to a collective bargaining agreement waived arbitration by filing for summary judgment. Finally, in *Otis Housing Ass'n v. Ha*,[25] the housing association waived its right to arbitrate the issue of whether an option to purchase had been properly exercised by filing an action to compel arbitration after litigating the same issue.

¶13 These cases demonstrate that the right to arbitration must be timely invoked. In the cases above, the parties seeking arbitration first asserted that right well into the litigation. Here, Garda timely invoked its right to arbitration at the beginning of the litigation and throughout the proceedings leading up to its motion to compel. The record establishes the employees' awareness that Garda wished to arbitrate the claims. And the delay in filing the motion to

---

[19] *Steele*, 85 Wn. App. at 855-56.

[20] *Steele*, 85 Wn. App. at 856.

[21] 142 Wn. App 369, 384, 174 P.3d 1231 (2008).

[22] *Ives*, 142 Wn. App. at 384.

[23] *Ives*, 142 Wn. App. at 384.

[24] 54 Wn. App. 388, 395-96, 775 P.2d 960 (1989).

[25] 165 Wn.2d 582, 588, 201 P.3d 309 (2009).

compel was due, at least in part, to the parties' desire to engage in mediation, which is not an act inconsistent with arbitration.

¶14 Additionally, Garda's other actions do not demonstrate waiver. While Garda engaged in discovery, took depositions, and engaged in limited motions practice, it did not demonstrate the extensive or aggressive litigation behavior found to be indicative of waiver in *Steele*. Garda moved for summary judgment. But unlike the teachers in *Cruzen*, Garda joined this motion with its motion to compel. Finally, the employees have not demonstrated that Garda had prepared fully for trial as the defendant in *Ives* had. Because Garda's conduct does not demonstrate an intent to litigate rather than arbitrate, Garda did not waive its arbitration right.

¶15 Second, the employees argue that they did not "clearly and unmistakably" waive their rights to pursue their claims in a judicial forum. In other words, they claim that arbitration is not mandatory. We disagree. A party waives its right to a judicial forum only when the requirement to arbitrate is clear and unmistakable.[26] This rule exists to protect the interests of the individual, which are at times in tension with the collective interests represented by a union.[27] Broad, general language is insufficient to effect a clear and unmistakable waiver.[28]

¶16 In this case, the grievance procedures in the collective bargaining agreements require arbitration of all "grievances," which are defined as

> a legitimate controversy, claim or dispute by an employee, shop steward or the Union concerning rates of pay, entitlement to compensation, benefits, hours, or working conditions set forth

---

[26] *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-80, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998); *see also Brundridge v. Fluor Fed. Servs., Inc.*, 109 Wn. App. 347, 355, 35 P.3d 389 (2001).

[27] *Brundridge*, 109 Wn. App. at 355; *see also Wright*, 525 U.S. at 80-81.

[28] *Wright*, 525 U.S. at 80.

herein, including without limitation, claims of harassment or discrimination or hostile work environment in any form, . . . or any claim of retaliation for making any such or similar claim, or the interpretation or application of this Agreement or any agreement made supplementary thereto, or any claim under any federal, state or local law, statute or regulation or under any common law theory whether residing in contract, tort or equity or any other claim related to the employment relationship.

These arbitration agreements require employees to submit *any* claim under *any* federal, state, or local law to the grievance procedure outlined in the arbitration agreement. Clearly, this provision encompasses the employees' wage claims under chapter 49.52 RCW and chapter 49.12 RCW. The requirement to arbitrate is clear and unmistakable. The employees waived their rights to pursue their claims through litigation.

¶17 The employees disagree, arguing that this case is like *Brundridge v. Fluor Federal Services, Inc.*[29] It is not. There, the arbitration clause required the parties to arbitrate any dispute " 'aris[ing] out of the interpretation or application of this AGREEMENT.' "[30] Because the employees' claim for wrongful discharge in violation of public policy did not require the application or interpretation of the collective bargaining agreement and because the arbitration clause did not explicitly incorporate the employees' statutory claims, Division Three of this court held that the arbitration clause was not sufficiently specific to waive the employees' rights to pursue their claims in court.[31] In contrast to the arbitration clause in *Brundridge*, the arbitration agreements here include claims arising under state law. Because the arbitration agreements explicitly incorporate the employees' claims, *Brundridge* does not control.

---

[29] 109 Wn. App. 347, 35 P.3d 389 (2001).

[30] *Brundridge*, 109 Wn. App. at 356 (alteration in original).

[31] *Brundridge*, 109 Wn. App. at 356.

¶18 The employees also assert that the arbitration agreements limit the types of grievances they must arbitrate. They rely on a clause requiring a meeting between the employer and the union before submitting the case to arbitration, which states, "If after such management-union meeting arbitration is still necessary *because a legitimate as well as significant issue of contract application remains open*, then both the Company and the Union shall prepare a written position statement for submission to the arbitrator." (Emphasis added.) According to the employees, because their claims do not involve an issue of contract interpretation, they are not subject to arbitration under the agreement. We, however, must read each contract as a whole.[32] Each arbitration agreement describes a grievance and arbitration process and identifies the categories of claims subject to that process. The covered claims include those arising under state law. The underlined language from the agreements simply describes the next step in the grievance and arbitration process. To read the contracts as suggested would eliminate a remedy for certain conflicts. And even if the contracts are ambiguous as to which claims may proceed to arbitration, we must interpret any ambiguity resulting from the phrasing in favor of arbitration.[33]

¶19 The employees claim that the arbitration agreement must contain an explicit statement that arbitration is the parties' exclusive remedy. We disagree. A collective bargaining agreement's grievance and arbitration procedure is presumed to be the exclusive remedy unless otherwise stated in the contract.[34] Because there is no statement to the contrary, we presume that arbitration is the employees' exclusive remedy.

---

[32] *Berg v. Hudesman*, 115 Wn.2d 657, 666, 801 P.2d 222 (1990).

[33] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

[34] *Minter v. Pierce Transit*, 68 Wn. App. 528, 531-32, 843 P.2d 1128 (1993) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53, 657-58, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965)).

¶20 Having determined that Garda did not waive arbitration and that the parties unequivocally agreed to arbitrate the current disputes, we turn to Garda's appeal. Garda claims that the trial court erred by compelling class arbitration, arguing that only an arbitrator may decide whether an agreement permits arbitration on a class-wide basis. We agree that the trial court erred by ordering class arbitration but reach this conclusion without deciding whether the arbitrator or the court should decide the availability of class arbitration.

¶21 *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*[35] controls the outcome of this case. Stolt-Nielsen, a shipping company, entered into a contract for maritime shipping services, known as a charter party, with Animal-Feeds, a supplier of raw ingredients for animal feed.[36] The charter party contained an arbitration clause.[37] After a criminal investigation revealed that Stolt-Nielsen and other shipping companies were engaged in an illegal price-fixing conspiracy, AnimalFeeds and other charterers brought similar suits against Stolt-Nielsen.[38] Their claims were determined to be subject to mandatory arbitration, and AnimalFeeds served Stolt-Nielsen with a demand for class arbitration.[39] The parties stipulated that the arbitration clause was silent on the issue of class arbitration.[40] The arbitrators, however, concluded that the arbitration clause allowed for class arbitration because the clause did not "show 'an inten[t] to preclude class arbitration.' "[41] The district court vacated the award, and the Court of Appeals reversed,

---

[35] 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010).

[36] *Stolt-Nielsen*, 559 U.S. at 666. A charter party is a standard contract in the maritime trade.

[37] *Stolt-Nielsen*, 559 U.S. at 667.

[38] *Stolt-Nielsen*, 559 U.S. at 667.

[39] *Stolt-Nielsen*, 559 U.S. at 668.

[40] *Stolt-Nielsen*, 559 U.S. at 668.

[41] *Stolt-Nielsen*, 559 U.S. at 669 (alteration in original).

finding that "the arbitrators' decision was not in manifest disregard of federal maritime law."[42]

¶22 The United States Supreme Court granted certiorari "to decide whether imposing class arbitration on parties whose arbitration clauses are 'silent' on that issue is consistent with the Federal Arbitration Act (FAA), 9 U.S.C. §[§] 1[-16]."[43] In answering this question, the Court noted that the arbitration panel had failed to determine what the parties' agreement permitted and instead "impose[d] its own view of sound policy regarding class arbitration."[44] It decided that the parties' stipulation about their agreement's silence on class arbitration "left no room for an inquiry regarding the parties' intent."[45]

¶23 After observing that arbitration " 'is a matter of consent, not coercion,' "[46] the Court stated,

> [C]ourts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties.
>
> . . .
>
> From these principles, it follows that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.[47]

Because the parties had not agreed to arbitrate on a class-wide basis, they could not be compelled to submit their dispute to class arbitration.[48]

---

[42] *Stolt-Nielsen*, 559 U.S. at 670.

[43] *Stolt-Nielsen*, 559 U.S. at 666.

[44] *Stolt-Nielsen*, 559 U.S. at 672.

[45] *Stolt-Nielsen*, 559 U.S. at 676.

[46] *Stolt-Nielsen*, 559 U.S. at 681 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).

[47] *Stolt-Nielsen*, 559 U.S. at 684 (citation omitted).

[48] *Stolt-Nielsen*, 559 U.S. at 684.

¶24 The Court noted that § 10(b) of the FAA required it either to " 'direct a rehearing by the arbitrators' " or decide the question originally referred to the panel.[49] Because the Court concluded that the facts before it permitted only one outcome, it decided the outcome.[50]

¶25 Turning to the arbitration agreements in this case, the contracts here, as in *Stolt-Nielsen*, are silent on the issue of class arbitration. When it compelled the parties to arbitrate on a class-wide basis, the trial court did not ascertain the parties' intent from the language of the agreement. Because no contractual basis existed allowing the court to order class arbitration, the trial court erred by doing so.

¶26 As in *Stolt-Nielsen*, only one possible outcome exists under the facts of this case; therefore, we do not remand to either the court or the arbitrator for determination of whether the arbitration agreement allows class arbitration. As a matter of law, the trial court could not compel class arbitration. We remand for individual arbitration.

## CONCLUSION

¶27 We reverse the trial court's order compelling class arbitration and remand for individual arbitration.

BECKER and DWYER, JJ., concur.

Review granted at 176 Wn.2d 1010 (2013).

---

[49] *Stolt-Nielsen*, 559 U.S. at 677.

[50] *Stolt-Nielsen*, 559 U.S. at 677.