FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2019 FEB 11 AM 11: 00

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| JEOUNG LEE and SHERRI MCFARLAND, on their own behalf and on behalf of all persons similarly situated, | ) ) ) ) ) | No. 77694-1-I |
| Respondents, | ) ) ) | |
| v. | ) ) | |
| EVERGREEN HOSPITAL MEDICAL CENTER, a/k/a KING COUNTY PUBLIC HOSPITAL DISTRICT #2, | ) ) ) ) | PUBLISHED OPINION  FILED: February 11, 2019 |
| Appellant. | ) ) | |

VERELLEN, J. — A union employee working for a public employer does not waive her ability to bring statutory wage and hour claims in a judicial forum unless her collective bargaining agreement (CBA) clearly and unmistakably does so. Because, on its face, the CBA between the Washington State Nurses' Association (WSNA) and Evergreen Hospital (Evergreen) does not waive union members' abilities to enforce their statutory rights in a judicial forum, the trial court correctly denied Evergreen's motion to compel arbitration.

Even if Evergreen had the right to compel arbitration under the CBA, it waived any right to do so by its conduct. A litigant waives its right to invoke arbitration where it knows of its right to arbitrate and engages in conduct

inconsistent with seeking arbitration, such as actively litigating and passing an obvious opportunity to assert that right. Evergreen noted its right to arbitrate in its answer to Jeoung Lee's initial complaint. Evergreen actively litigated the dispute for nine months and then opposed Lee's motion to continue the impending trial date, declaring it was ready to litigate as scheduled. Three weeks later, Evergreen filed its motion to compel arbitration. Because Evergreen knew of any right to compel arbitration, litigated vigorously, and passed an obvious opportunity to assert its right to compel arbitration, Evergreen waived its right.

Therefore, we affirm.

## FACTS

Lee was an emergency room nurse at Evergreen from February 2010 until August 2016. The terms of her employment were governed by a CBA between Evergreen and WSNA. To resolve nurses' work-related grievances, the CBA provided a set of informal procedures culminating with the option of arbitration. The CBA also contained a provision about nurses' meal and rest breaks.

Lee filed a putative class action in November 2016 with herself as the sole representative plaintiff alleging that Evergreen denied emergency room nurses their statutorily guaranteed rest and meal breaks. Evergreen filed an answer in December denying that class certification was appropriate and raising an affirmative defense alleging that Lee "failed to exhaust the grievance and arbitration process under the applicable collective bargaining agreement."[1] On

---

[1] Clerk's Papers (CP) at 10.

2

January 17, 2017, Lee filed a first amended complaint making identical rest and meal break allegations.[2]

Over the next six months, the parties engaged in discovery, conducted depositions, disagreed about trial dates, and disputed class certification. Lee also sent out class notices to over 500 nurses after the court certified the proposed class.

On July 26, Evergreen deposed class member Sherri McFarland. Soon after, Lee moved to continue the trial date from November of 2017 to March of 2018 and to amend her complaint by adding McFarland as a representative plaintiff. Evergreen opposed Lee's motion to continue and argued trial should go forward as scheduled. The court granted Lee's motion to continue.

On August 15, the court also granted Lee's motion to file her second amended complaint, which is the operative complaint. Two weeks later, Evergreen filed its motion to compel arbitration and alleged "Plaintiffs' second amended complaint, recent discovery requests, and deposition testimony of class representatives now make clear that the claims arise under the [CBA]."[3] The court denied Evergreen's motion to compel arbitration.

Evergreen appeals.

---

[2] Lee originally filed to certify a class under CR 23(b)(2), and Evergreen moved to dismiss because she sought damages. The first amended complaint was essentially the same, except for seeking class certification pursuant to CR 23(b)(3).

[3] CP at 544.

ANALYSIS

We review de novo denial of a motion to compel arbitration.[4] We also review de novo whether a party waived the right to compel arbitration.[5]

Whether The CBA Requires Arbitration

Evergreen contends the CBA compels binding arbitration of all class claims because Lee's alleged violations arise from section 7.7 of the CBA, not from any statute or regulation.[6]

The Federal Arbitration Act (FAA)[7] generally applies to CBAs.[8] We apply federal substantive law to any arbitration agreement within the coverage of the FAA.[9] When reviewing a motion to compel arbitration, we consider "'whether the arbitration agreement is valid'" and "'whether the agreement encompasses the

---

[4] Cox v. Kroger Co., 2 Wn. App. 2d 395, 403, 409 P.3d 1191 (2018). The parties debate whether a motion to compel arbitration may be made as a general motion or whether it must be made pursuant to CR 12(c) or CR 56. But the issue is purely academic because Evergreen advised the trial court it was moving pursuant to CR 12, and both parties urge us to consider materials outside the pleadings. Thus, our review is de novo regardless of which civil rule governed Evergreen's motion to compel arbitration.

[5] Romney ex rel. Estate of Romney v. Franciscan Med. Grp., 199 Wn. App. 589, 602, 399 P.3d 1220, review denied, 189 Wn.2d 1026 (2017).

[6] Evergreen addresses Lee and McFarland's individual claims separately from class claims and contends both must be submitted to arbitration. Because Evergreen did not appeal class certification, and we do not consider the underlying issues—e.g., class certification—on appeal of a motion to compel arbitration, Peninsula Sch. Dist. No. 401 v. Public Sch. Emp. of Peninsula, 130 Wn.2d 401, 413, 924 P.2d 13 (1996), we treat all claims as class claims.

[7] 9 U.S.C. §§ 1-14.

[8] Cox, 2 Wn. App. 2d at 403.

[9] Id. at 403-04.

4

claims asserted.'"[10] If both criteria are met, then Washington courts order arbitration in most instances.[11] The parties do not dispute the validity of the CBA. The critical question is whether Lee's claims are statutory or contractual.[12]

Evergreen relies on RCW 49.12.187 to argue Lee's claims are contractual because the statute gives public employers and public employee unions the ability to negotiate CBAs "that specifically vary from or supersede, in part or in total, rules adopted under this chapter regarding appropriate rest and meal periods."[13] But section 7.7 does not vary from or supersede WAC 296-126-092. And this CBA's grievance process does not encompass statutory claims.

Article 16 in the CBA provides a four-step grievance process.[14] The CBA defines a grievance as "an alleged breach of the *express* terms and conditions" of

---

[10] Id. at 404 (quoting Wiese v. CACH, LLC, 189 Wn. App. 466, 474, 358 P.3d 1213 (2015)).

[11] Estate of Romney, 199 Wn. App. at 596-97.

[12] Evergreen argues this court lacks the authority to compare the CBA with meal and rest break regulations because issues of arbitrability must be resolved by an arbitrator. But threshold questions around arbitrability—questions about "'whether the parties have submitted a particular dispute to arbitration'"—should be resolved by courts unless the parties clearly and unmistakably provided otherwise in their CBA. Martin v. Yasuda, 829 F.3d 1118, 1123 (9th Cir. 2016) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)); accord FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 190 Wn.2d 281, 287, 413 P.3d 1 (2018). Because the CBA does not provide otherwise, we determine if Lee's claims are arbitrable.

[13] RCW 49.12.187.

[14] First, a nurse must present her written grievance to her supervisor. Second, if unresolved, she must present her written grievance to the chief nurse executive. Third, if still unresolved, the nurse must present her grievance to an administrator. Fourth, "[i]f the grievance is not settled on the basis of the foregoing

5

the agreement.[15] The terms of this CBA do not allow an alleged statutory breach to be grieved under this narrow definition.

Chapter 49.12 RCW authorizes the creation of regulations about meal and rest periods for employees, which are defined in WAC 296-126-092:

(1) Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.

(2) No employee shall be required to work more than five consecutive hours without a meal period.

(3) Employees working three or more hours longer than a normal work day shall be allowed at least one thirty-minute meal period prior to or during the overtime period.

(4) Employees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period.

(5) Where the nature of the work allows employees to take intermittent rest periods equivalent to ten minutes for each 4 hours worked, scheduled rest periods are not required.

Section 7.7 of the CBA addresses meal and rest periods for nurses:

Meal periods and rest periods shall be administered in accordance with state law (WAC 296-126-092). Nurses shall be allowed an unpaid meal period of one-half (1/2) hour. Nurses required by the Employer to remain on duty during their meal period shall be compensated for such time at the appropriate rate of pay. All nurses

procedures, [WSNA] may submit the issue in writing to final and binding arbitration." CP at 107.

[15] CP at 106 (emphasis added).

shall be allowed a rest compensated for such time at the appropriate rate of pay. All nurses shall be allowed a rest period of fifteen (15) minutes on the Employer's time, for each four (4) hours of working time.[16]

Contrary to Evergreen's contentions, section 7.7 in the CBA merely comports with WAC 296-126-092. Section 7.7 states meal and rest breaks "shall be administered in accordance with" WAC 296-126-092.[17] Notably, the regulation is more extensive than section 7.7 and addresses matters on which the CBA is silent.[18] For example, section 7.7 does not provide guidance on when nurses can take rest breaks. WAC 296-126-092(4) requires that rest periods be scheduled as near as possible to the midpoint of an employee's work period. Also, section 7.7 does not explain when employees can take meal breaks.[19] But WAC 296-126-092(2) requires that "[n]o employee shall be required to work more than five consecutive hours without a meal period." As section 7.7 states, administration of the CBA necessarily relies on compliance with the regulation rather than the CBA varying from or superseding the regulation.

---

[16] CP at 93.

[17] CP at 93.

[18] Compare CP at 93 (section 7.7 of the CBA), with WAC 296-126-092.

[19] Throughout its briefing and at oral argument, Evergreen repeatedly claimed that the CBA provides only one meal break per 12-hour shift. But this is misleading. The section of the CBA Evergreen cites to for this fact is an addendum to the CBA applicable only to nurses working a "combined shift schedule" with both eight and 12-hour shifts. CP at 198. Generally, though, nurses working 12-hour shifts would work three 12-hour shifts within a seven day period. Because Lee and McFarland only worked 12-hour shifts, the combined shift schedule would not have applied to them. Instead, section 7.7, rather than the addendum, governed their meal and rest breaks.

7

Evergreen makes much of the fact that section 7.7 provides for a 15-minute rest period, whereas WAC 296-126-092(4) provides for a rest period of "no less than ten minutes."[20] But 15 minutes is "no less than ten minutes." The 15-minute rest period merely reflects compliance with rather than variance from the regulation. Also, Lee's claim is for missed rest breaks. The potential duration of a rest break is irrelevant if the break never begins or was less than 10 minutes.

Evergreen also relies on deposition testimony from McFarland and other class members to argue Lee's claims are contractual rather than statutory. But arguable differences between class claims pled in the complaint and snippets of plaintiffs' testimony do not recast Lee's claims as Evergreen wants them to be.[21] Specifically, Evergreen contends that McFarland's testimony about missed breaks

---

[20] See, e.g., Appellant's Br. at 23-25 ("The CBA grants nurses 15-minute rest breaks, *not* the 10 minutes provided by WAC 296-126-092(4). . . . If nurses missed their 15-minute rest breaks and were not paid, that is a 'breach of the express terms and conditions' of the CBA and must be resolved through the CBA's grievance process, culminating in arbitration.").

[21] Evergreen points to CR 15(b) and related cases as authority for its contention. But neither CR 15 nor the cases Evergreen cites apply here. "CR 15(b) is applicable in general terms to those occasions when the course of the trial departs so materially from the image of the controversy pictured in the pleadings that it becomes necessary to adjust the pleadings to reflect the case as it was actually litigated in the courtroom." Harding v. Will, 81 Wn.2d 132, 136, 500 P.2d 91 (1972). "Where evidence raising issues beyond the scope of the pleadings is admitted without objection, the pleadings will be deemed amended to conform to the proof." Reichelt v. Johns-Manville Corp., 107 Wn.2d 761, 766-67, 733 P.2d 530 (1987). CR 15(b) is not an invitation to recast one party's claims at the behest of the opposing party based on highly disputed characterizations of cherry-picked deposition testimony.

shows her claims arise under the CBA,[22] but the rest and meal breaks provided by the CBA accord with state law.[23] And Lee's complaint alleges Evergreen failed to provide any rest breaks regardless of each break's duration. Neither the CBA nor plaintiffs' testimony converts this statutory claim into a contractual one.

Evergreen contends that all disputes between parties to a CBA are presumptively subject to arbitration unless specifically excluded. This argument is not persuasive because it fails to recognize the source of the rights Lee asserts in her complaint.

The "Steelworkers Trilogy,"[24] which sets out the principles governing arbitration of public employee labor disputes governed by a CBA, strongly favors

---

[22] E.g., Appellant's Br. at 14-16 ("I think if the union contract states that they're required to give you a rest break within a certain period of time, then if they do not give you that, they ought to pay you for it, yes.") (quoting CP at 589-90).

[23] Evergreen also relies on testimony from a single class member to argue Lee's claims rely on the "CBA's ten-minute continuous and 15-minute total standards" for rest breaks. Appellant's Br. at 24. But Lee's expectation of a continuous 10-minute break does not originate in the CBA. WAC 296-126-092(4) requires a rest break of at least 10 minutes, while WAC 296-126-092(5) merely allows for short, intermittent breaks over four hours to add up to a single 10-minute break. Whether some nurses take advantage of WAC 296-126-092(5) is a question germane to class certification and damages, neither of which are before us. Also, this argument admits that nurses can satisfy the break requirement in their CBA by totaling their short breaks over four hours even though this procedure is available only through WAC 296-126-092(5) and not section 7.7 of the CBA. It shows the CBA being administered by the regulation rather than superseding it.

[24] See United Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960); United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).

arbitration of contractual disputes within the scope of an arbitration provision.[25]

But a public or private employee's statutory rights are distinct from her contractual rights.[26] Even where a CBA contains a provision that is coextensive with a statutory right, the ultimate question is what the law requires; "and that is not a question which should be *presumed* to be included within the arbitration requirement."[27]

Moreover, arbitration clauses in CBAs differ from arbitration clauses in bilateral employment contracts, particularly when it comes to statutory rights.[28] Consequently, an employee retains the ability to enforce her statutory rights in court unless the employees clearly and expressly agreed in the CBA to arbitrate their statutory claims.[29] The CBA must "explicitly state[]" in "clear and

---

[25] See RCW 41.56.122(2) ("A collective bargaining agreement may . . . . (2) Provide for binding arbitration of a labor dispute arising from the application or interpretation *of the matters contained in a* [CBA].") (emphasis added); Mount Adams Sch. Dist. v. Cook, 150 Wn.2d 716, 723, 81 P.3d 111 (2003) (quoting Peninsula Sch. Dist., 130 Wn.2d at 413-14) (summarizing principles derived from the Steelworker's Trilogy)).

[26] Vega v. New Forest Home Cemetery, LLC, 856 F.3d 1130, 1134 (7th Cir. 2017); Civil Serv. Comm' of City of Kelso v. City of Kelso, 137 Wn.2d 166, 175, 969 P.2d 474 (1999); see Wright v. Universal Mar. Serv. Corp., 525 U.S. 70, 78-80, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998) (concluding that the presumption favoring arbitrability in the Steelworker's Trilogy was inapplicable to a statutory claim).

[27] Wright, 525 U.S. at 79.

[28] E.g., Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1473-79 (D.C. Cir. 1997) (discussing the historic background of the role of arbitration and distinguishing contractual and statutory claims).

[29] 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 258-59, 264, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009) (holding that employees subject to a CBA must arbitrate statutory claims where the CBA's "arbitration provision *expressly* covers *both*

unmistakable language" that employees waive their ability to enforce statutory rights in court.[30]

In Vega v. New Forest Home Cemetery, LLC, a union employee working under a CBA sued his former employer to collect unpaid wages.[31] The employee brought claims under the Fair Labor Standards Act (FLSA)[32] and Illinois state wage law.[33] The CBA addressed the employee's wages, set out a mandatory four-step grievance process to resolve disputes, and explicitly defined grievances to include disputes over pay.[34] The court held the employee could sue in court to enforce his statutory wage rights under the FLSA because nothing in the CBA referenced the statute.[35] Because the CBA did not explicitly reference the FLSA, there was nothing clear and unmistakable in the CBA compelling the employee to assert his statutory rights through the grievance process.[36]

---

statutory and contractual discrimination claims.") (emphasis added); Wright, 525 U.S. at 79 ("[A]ny CBA requirement to arbitrate [a statutory claim] must be particularly clear.").

[30] Vega, 856 F.3d at 1134 (citing 14 Penn Plaza, 556 U.S. at 258-59); Cox, 2 Wn. App. 2d at 404; cf. Kelso, 137 Wn.2d at 177 ("[W]here the two appeal processes are concerned with different substantive rights, this court will not impose an election of remedies clause [in a CBA] where none was bargained for by the parties.").

[31] 856 F.3d 1130, 1131 (7th Cir. 2017).

[32] 29 U.S.C. § 206(b).

[33] Vega, 856 F.3d at 1132.

[34] Id. at 1133. Notably, the mandatory grievance process in Vega authorized arbitration on the demand of either the union or the employer. Id. at 1131 n.1.

[35] Id. at 1135.

[36] Id.

11

Similarly, this court recently held in Cox v. Kroger Co. that an arbitration provision in a union employee's CBA did not waive his ability to bring statutory wage and hour claims in court.[37] The employee brought a class action against his former employer to collect wages allegedly denied in violation of state wage laws.[38] Because neither the CBA's wage nor grievance provisions identified or even referenced any wage statutes covered by the agreement, the CBA did not "clearly and unmistakably" waive his ability to enforce his statutory rights in court.[39] The court affirmed the trial court's denial of the employer's motion to compel arbitration.[40]

By contrast, the Supreme Court held in 14 Penn Plaza LLC v. Pyett that a union employees' CBA waived their ability to enforce statutory rights in court.[41] The employees alleged discrimination in violation of the federal Age Discrimination in Employment Act of 1967 (ADEA).[42] But the employees' CBA explicitly provided that all employment discrimination claims, including those brought under the ADEA, would be subject to the contract's grievance provision requiring binding arbitration "as the sole and exclusive remedy for violations."[43] The court reasoned

---

[37] 2 Wn. App. 2d 395, 405, 409 P.3d 1191 (2018).

[38] Id. at 399-400.

[39] Id. at at 404-05.

[40] Id. at 405

[41] 556 U.S. 247, 251-52, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009).

[42] 29 U.S.C. § 621.

[43] Id. at 251-52.

the CBA "clearly and unmistakably" required arbitration because the discrimination section explicitly stated ADEA claims were arbitrable.[44]

Here, as in Vega and Cox, article 16 makes no reference of any kind to any statute or to statutory rights. In addition, article 16 narrowly defines a grievance as an "alleged breach of the express terms and conditions of the [CBA],"[45] which WAC 296-126-092 is not. And unlike 14 Penn Plaza, no part of the CBA explicitly waives Lee's ability to enforce her statutory rights in court. Lee's complaint alleges that she and her fellow class members "did not receive meal and rest breaks violat[ing] RCW 49.12 and WAC 296-126-092."[46] The complaint does not reference breach of any contractual term, and the face of the CBA shows it does not supersede or vary from WAC 296-126-092.[47]

Article 16 provides the option of submitting unresolved grievances to binding arbitration, rather than mandating arbitration in all instances.[48] And, as in

---

[44] Id. at 260.

[45] CP at 106.

[46] CP at 439.

[47] We note that our Supreme Court has held that a CBA may not abrogate a worker's right to periodic rest periods under chapter 49.12 RCW or WAC 296-196-092, and the statute must "operate as a base" from which parties may negotiate a CBA that "enhance[s] or exceed[s] those minimum standards." Wingert v. Yellow Freight Sys., Inc., 146 Wn.2d 841, 852, 50 P.3d 256 (2002) (quoting Wingert v. Yellow Freight Sys., Inc., 104 Wn. App. 583, 596, 13 P.3d 677 (2000)). Thus, variances are still actionable as statutory claims to the extent the CBA abrogates an emergency room nurse's ability to enjoy the minimum rest and meal breaks guaranteed by the statute.

[48] CP at 107 ("If the grievance is not settled on the basis of the foregoing procedures, [WSNA] may submit the issue in writing to final and binding arbitration.") (emphasis added).

13

Cox, the CBA's grievance provisions make no mention of any statutory rights and apply only to a breach of the agreement's express terms. Lee's complaint does not implicate the CBA and, moreover, the CBA does not clearly and unmistakably waive Lee's ability to bring individual statutory claims in court.[49]

Evergreen contends, though, 14 Penn Plaza, Vega, and Cox are inapposite because those employees were privately employed whereas Lee was a public employee with a CBA subject to Washington's Public Employee Collective Bargaining Act (PECBA).[50] According to Evergreen, PECBA presumes that an employee's disputes with her public employer are subject to arbitration absent "a clear and unmistakable carve-out" because PECBA "provides an express waiver of a judicial forum for employee statutory claims on matters covered in the CBA."[51]

First, PECBA does not presume or mandate arbitration of employees' statutory claims. PECBA merely allows that a CBA "may . . . [p]rovide for binding arbitration of a labor dispute" arising from "matters contained in" the agreement.[52] The parties to a CBA are free to collectively bargain for particular dispute resolution procedures. PECBA mandates neither arbitration nor litigation. And, as discussed, Lee's statutory claims do not arise from "matters contained in" the CBA.

---

[49] 14 Penn Plaza, 556 U.S. 258-59; Wright, 525 U.S. at 79; Cox, 2 Wn. App. 2d at 404.

[50] Ch. 41.56 RCW.

[51] Appellant's Supp. Br. at 5-6.

[52] RCW 41.56.122(2).

Second, our Supreme Court recognized in Peninsula School District No. 401 v. Public School Employees of Peninsula that PECBA is not implicated where only "statutorily created private rights" are allegedly harmed by an employer's conduct.[53] In Peninsula, a school district declined to recognize a grievance filed jointly by a union and its member because the district argued the matter grieved fell outside the bounds of the CBA.[54] Thus, the court had to address whether the matter could be and was collectively bargained for.[55] The Peninsula court distinguished that case from Shoreline Community College District No. 7 v. Employment Security Department[56] because Peninsula did not involve a waiver of private statutory rights.[57]

In Shoreline, the community college argued that an English instructor was not entitled to unemployment benefits because his CBA calculated his work hours such that he could not meet the statutory minimum to receive benefits.[58] The community college further contended the CBA controlled over conflicting provisions of the Employment Security Act,[59] effectively waiving the instructor's right to receive unemployment benefits.[60] The court disagreed and held that a

---

[53] 130 Wn.2d 401, 412, 924 P.2d 13 (1996).

[54] Id. at 403-05.

[55] Id. at 409.

[56] 120 Wn.2d 394, 842 P.2d 938 (1992).

[57] 130 Wn.2d at 412.

[58] 120 Wn.2d at 401-02.

[59] Ch. 50.04 RCW.

[60] 120 Wn.2d at 401-02.

contractual waiver of the right to unemployment benefits was void as contrary to public policy because the right to benefits serves a public policy purpose; the court's analysis never considered PECBA.[61]

Because the CBA does not clearly and unmistakably waive Lee's ability to enforce her statutory rights in court and PECBA is not germane, the court did not err in denying Evergreen's motion to compel arbitration.[62]

---

[61] Id. at 410. We also note that PECBA's stated purpose is to provide "'a uniform basis for implementing the right of public employees to join . . . and to be represented by [labor] organizations in matters concerning their employment.'" Peninsula, 130 Wn.2d at 406-07 (quoting RCW 41.56.010). And cases cited by Evergreen implicating PECBA all involve infringements on a union's ability to represent its members. Peninsula, 130 Wn.2d at 403-04, 407 (school district refused to comply with CBA and enter arbitration after the union filed a grievance in conjunction with a terminated employee); Municipality of Metro. Seattle v. Pub. Emp't Relations Comm'n, 118 Wn.2d 621, 624, 631-34, 826 P.2d 158 (1992) (employer refused to comply with an order from the Public Employment Relations Commission mandating arbitration to advance the collective bargaining process between it and a union); Rose v. Erickson, 106 Wn.2d 420, 421-22, 721 P.2d 969 (1986) (employer refused to recognize a union employee's grievance filed pursuant to terms of the CBA); Nucleonics All., Local Union No. 1-369, Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Washington Pub. Power Supply Sys. (WPPSS), 101 Wn.2d 24, 25-27, 677 P.2d 108 (1984) (union sought to represent nonunion employees and employer opposed its efforts); SEIU 775 v. State Dep't of Soc. & Health Servs., 198 Wn. App. 745, 396 P.3d 369 (holding that PECBA does not prohibit a public employer's release of employees' names where the employees' union intervened to enjoin release of members' names under the Public Records Act), review denied, 189 Wn.2d 1011 (2017); The Council of County. & City Employees, AFSCME, AFL-CIO v. Spokane County, 32 Wn. App. 422, 647 P.2d 1058 (1982) (employer refused to recognize and arbitrate a grievance filed pursuant to CBA with the union). Here, by contrast, Evergreen's conduct implicates only private statutory rights and not collective bargaining rights. As in Shoreline Community College, PECBA does not appear to be germane to this litigation.

[62] Vega, 856 F.3d at 1134; Cox, 2 Wn. App. 2d at 404. Evergreen has moved to strike portions of Lee's supplemental briefing, which she and Evergreen both filed at our request. First, Evergreen's motion to strike relied exclusively on

Whether Evergreen Waived The Right To Compel Arbitration

Lee contends that even if the CBA required arbitration of her claims, Evergreen waived its right to compel arbitration.

We review de novo whether a party waived arbitration.[63]

"Washington courts have long held that the contractual right to arbitration may be waived if it is not timely invoked."[64] Because Washington has a strong presumption in favor of arbitration, the party arguing against it bears a heavy burden of showing that waiver occurred.[65] "'To establish waiver of the right to arbitration, the party opposing arbitration must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts.'"[66] A party asserting its right to arbitration acts inconsistently with that right where it seeks a decision on the merits of issues in the litigation[67] and fails to

---

materials outside the appellate record in violation of RAP 17.3(a). Second, Evergreen moved to strike only those portions of Lee's supplemental brief arguing that her claims are based solely on statutes, but a motion to strike is not the appropriate vehicle for arguments on the merits of an appeal. We deny the motion.

[63] Estate of Romney, 199 Wn. App. at 602.

[64] Otis Hous. Ass'n, Inc. v. Ha, 165 Wn.2d 582, 587, 201 P.3d 309 (2009).

[65] Estate of Romney, 199 Wn. App. at 602.

[66] Id. at 601-02 (internal quotation marks omitted) (quoting Wiese, 189 Wn. App. at 480).

[67] Martin, 829 F.3d at 1125; Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd., 575 F.3d 476, 480 (5th Cir. 2009); see Otis Housing Ass'n, 165 Wn.2d at 588, (litigating a parallel action before invoking right to arbitrate in a separate action on same merits waives the right); Naches Valley Sch. Dist. No. JT3 v. Cruzen, 54 Wn.

assert its right at "'obvious opportunities'" to do so.[68] "Simply put, . . . a party waives a right to arbitrate if it elects to litigate instead of arbitrate."[69]

Evergreen agrees it did not move to compel arbitration until the parties had been litigating for nine months.[70] But it contends it did not know the claims in the complaint arose under the CBA until after it deposed McFarland on July 26, 2017, and Lee added McFarland as a representative plaintiff a few weeks later.[71]

Lee's meal and rest break claims against Evergreen in her second amended complaint are identical to those in her first amended complaint and her original complaint.[72] Also, Evergreen first raised arbitration as a defense in the

---

App. 388, 395-96, 775 P.2d 960 (1989) (plaintiffs waived arbitration by filing for summary judgment on the merits of their claims).

[68] Hill v. Garda CL Nw. Inc., 169 Wn. App. 685, 692, 281 P.3d 334 (2012) (quoting Steele v. Lundgren, 85 Wn. App. 845, 853-55, 935 P.2d 671 (1997)), rev'd on other grounds, 179 Wn.2d 47, 308 P.3d 635 (2013).

[69] Otis Hous. Ass'n,, 165 Wn.2d at 588.

[70] See Appellant's Br. at 28-29 (Evergreen's "motion to compel arbitration was filed 15 days after the [c]ourt granted the motion to amend and plaintiffs filed the [s]econd [a]mended [c]omplaint.").

[71] See id. at 29-30 ("The combination of McFarland's deposition testimony, which was given before plaintiffs sought to amend the complaint, and the [s]econd [a]mended [c]omplaint made clear that the claims in this lawsuit arise under the CBA and require an interpretation of the CBA's express terms and past practices of the parties.").

[72] Compare CP at 439 (section VI of second amended complaint stating claims against Evergreen: "Defendant's practices under which Plaintiffs and the class did not receive meal and rest breaks violate RCW 49.12 and WAC 296-126-092."), with CP at 5, 17 (section VI of complaint and first amended complaint stating claims against Evergreen: "Defendant's practices under which Plaintiff and the class did not receive meal and rest breaks violate RCW 49.12 and WAC 296-126-092.").

18

answer it filed December 22, 2016.[73] Evergreen cannot now contend it did not know these claims might be arbitrable where its answer raised arbitration as an affirmative defense.

Evergreen behaved inconsistently with a party seeking to arbitrate. Soon after McFarland's deposition, Lee moved to continue trial from November 2017 to March 2018. Lee also sent Evergreen a copy of her proposed second amended complaint adding McFarland as a representative plaintiff. Evergreen opposed the motion to continue, and stated it "is prepared to try this case on November 6, 2017."[74] Also, Evergreen was fully aware of McFarland's deposition testimony at the time it insisted on litigating. Evergreen specifically argued against granting Lee a continuance because McFarland had already been deposed and "[a] second class representative adds nothing to the present case."[75] Put simply, Evergreen elected to litigate and missed an obvious opportunity to assert its right to arbitrate.

Lee would be prejudiced by granting Evergreen's motion to compel. "When a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel, the party is indeed prejudiced."[76] For example, there is prejudice when a party loses a motion on the merits and

---

[73] CP at 10.

[74] CP at 1793.

[75] CP at 1798.

[76] Martin, 829 F.3d at 1127.

effectively attempts to relitigate it by invoking arbitration[77] or when a party "too long postpones" invocation of arbitration and causes the opposing party "to incur unnecessary delay or expense."[78]

Here, Lee will be prejudiced if Evergreen is allowed to belatedly compel arbitration. Lee asserts she incurred over $140,000 in fees and costs from formal discovery and pretrial litigation before Evergreen moved to compel arbitration. Granting Evergreen's motion would also prejudice Lee by giving Evergreen a second chance on the critical substantive issues, such as class certification, that it litigated and lost.[79]

Evergreen analogizes to Hill v. Garda CL Northwest Inc. to argue it did not waive its right to compel arbitration.[80] In Hill, a group of employees filed a putative class action against an armored car company for alleged wage violations.[81] The

---

[77] Steele, 85 Wn. App. at 859.

[78] Schuster v. Prestige Senior Mgmt., LLC, 193 Wn. App. 616, 643, 376 P.3d 412 (2016); Steele, 85 Wn. App. at 859. Evergreen argues that its motion to compel arbitration was not belated because it occurred only two weeks after the court approved Lee's second amended complaint. But this ignores the preceding nine months of litigation during which Evergreen knew it could arbitrate, and it attempts to elevate chronology over conduct.

[79] Steele, 85 Wn. App. at 859; see Martin, 829 F.3d at 1128 (holding the defendant waived arbitration "because the plaintiffs would be prejudiced if the defendants got a mulligan on a legal issue it chose to litigate in court and lost"); Riverside Publ'g Co. v. Mercer Publ'g LLC, 829 F. Supp. 2d 1017, 1021-23 (W.D. Wash. 2011) (finding prejudice from the plaintiff's "forum shopping" when it belatedly moved to compel arbitration only after losing substantive pretrial motions).

[80] 169 Wn. App. 685, 691-94, 281 P.3d 334 (2012).

[81] Id. at 688.

company asserted its right to compel arbitration in its answer and began to engage in discovery, but it did not move to compel arbitration for over one year.[82] But during that year, the parties agreed to delay litigation while awaiting the outcome in a very similar case[83] being litigated in this court.[84] After the similar case was decided, the parties filed a joint stipulation agreeing that the matter was arbitrable.[85] Also, both parties endeavored to resolve the dispute through mediation prior to committing to arbitration or litigation.[86] After the company finally moved to compel arbitration, this court held it had not waived the right to arbitrate "[b]ecause the delay in filing the motion to compel resulted in part from an effort to resolve this case without resorting to litigation and Garda asserted its arbitration rights in its answer."[87]

Evergreen's conduct in this case bears little similarity to that of the armored car company. Unlike the company in Hill, Evergreen demanded to litigate this case in court before seeking arbitration. Also, nothing in the appellate record shows an effort by either party to resolve this dispute out of court.

Evergreen's knowledge of its ability to invoke arbitration, its litigation conduct, and the potential prejudice to Lee demonstrate waiver of the right to

---

[82] Id. at 688-89, 691.

[83] Pellino v. Brink's Inc., 164 Wn. App. 668, 267 P.3d 383 (2011).

[84] Hill, 169 Wn. App. at 691.

[85] Id.

[86] Id. at 692.

[87] Id.

21

arbitrate. Accordingly, we conclude Evergreen waived the right to arbitrate when it elected to litigate instead of arbitrate.[88]

For the foregoing reasons, we affirm.

WE CONCUR:

---

[88] Otis Hous. Ass'n, 165 Wn.2d at 588.